**Thomas DOYLE, Plaintiff,**

v.

**William BROCK, Defendant.**

**Civ. A. No. 85–0616.**

United States District Court, District of Columbia.

July 2, 1986.

Paul Alan Levy, Public Citizen Litigation Group, Washington, D.C., for plaintiff.

Jeffrey Hunter Moon, Royce C. Lamberth, Asst. U.S. Attys., Joseph E. DiGenova, U.S. Atty., Washington, D.C., for defendant.

## MEMORANDUM OPINION

BARRINGTON D. PARKER, Senior District Judge:

Under 29 U.S.C. § 482 (1982), the Secretary of Labor is authorized to sue in a federal district court on behalf of a union member to set aside an allegedly invalid union election. In this proceeding plaintiff Thomas Doyle sues the Secretary because of his refusal to bring an action against Local 6 of the International Brotherhood of Electrical Workers ("Local 6" or "Union") to overturn a union election held in June 1984. Ruling insufficient the Secretary's initial statement of reasons [1] for that refusal, the Court remanded the matter to the

---

1. Two separate documents comprised the Secretary's initial statement of reasons. These documents are attached as exhibits to the Memorandum Opinion of March 4, 1986. For convenience, they will be referred to in this opinion as the initial or original statement of reasons.

Secretary for further consideration of Doyle's challenge.

Doyle, a candidate for union office, was declared ineligible to run by Local 6 because of a meeting attendance requirement contained in the Union bylaws. He maintains that the Secretary should file suit against the Union because the meeting attendance requirement is not a "reasonable qualification" for union office under 29 U.S.C. § 481(e). The relevant background of the case is set out in the Court's Memorandum Opinion of March 4, 1986, *Doyle v. Brock*, 632 F.Supp. 256 (D.D.C.1986).

Upon remand, the Secretary again determined not to sue Local 6 on plaintiff's behalf and, as required by the remand order, offered a supplemental statement of reasons ("Supplemental Statement") for that decision. The Supplemental Statement must now be reviewed under the standard set out in *Dunlop v. Bachowski*, 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975), and discussed in the earlier opinion. 632 F.Supp. at 258; *see also Shelley v. Brock*, 793 F.2d 1368, 1372–73 (D.C.Cir. 1986). While it is far more detailed than the previous statement and, in contrast to the earlier effort, at least attempts to answer plaintiff's claims, the Court again concludes that the Secretary has failed to offer a rational explanation consistent with current caselaw for the refusal to file suit.

## DISCUSSION

The original statement of reasons for not filing suit was found inadequate for two independent reasons. First, it failed to adequately address Doyle's claim that the challenged bylaw has no legitimate justification that outweighs its significant antidemocratic effect, that is, the exclusion of 97 percent of the Union's membership from candidacy in the election. The initial statement did not even recognize the substantial precedent indicating that the exclusion of such a large percentage of members often makes a qualification unreasonable. Second, the statement did not explain the Secretary's rejection of Doyle's claim that the Union's use of an attendance roster to determine candidate eligibility violated Department of Labor regulations since the means of complying with eligibility requirements was not clearly expressed in the bylaws or other duly enacted rules. The Supplemental Statement adequately addresses the second issue, but does not provide a consistent and rational analysis sufficient to justify not filing suit on basis of the first.

### A.

■ The Supplemental Statement treats much more thoroughly Doyle's contention that the application of the meeting attendance requirement by referring only to the attendance roster violated a provision of the Department's own regulations interpreting the "reasonableness" of candidacy qualifications. 29 C.F.R. § 452.53 (1985). The general meeting attendance requirement was published in a bylaw and anyone intending to meet it would have to attend meetings or request excuses. The Secretary found that "the local's procedure for determining meeting attendance ... was a longstanding practice known to members attending the Local's regular meetings." Supplemental Statement at 12; *accord id.* at 3. Thus, the Secretary concluded that "any member seeking to qualify under Rule 9(f) would have notice of the requirement that he or she sign the Register of Attendance." *Id.* at 12. The finding that members knew the purpose of the attendance roster and that Doyle's assertion of his own lack of knowledge was not credible, Supplemental Statement at 6, are not open to challenge under *Bachowski*. Based on his investigation, the Secretary concluded that the application of the qualification contained in the Union bylaws was not unreasonable, and the Court does not believe this conclusion was irrational.

### B.

■ A different judgment must be reached regarding the Secretary's treatment of Doyle's more general challenge to the meeting attendance requirement based on its exclusion of 97 percent of the mem-

bership from union candidacy. The Supplemental Statement does little more than replow in more detail ground already covered in the initial statement of reasons, but it does make clear that the Secretary's primary reason for not moving to strike down the qualification on this ground was the liberal excuse policy contained in Article III, section 9(g) of the bylaws. No other explanation is offered or apparent for the inconsistency between his refusal to bring suit in this case and his successful challenge to a less restrictive attendance requirement in *Donovan v. Cincinnati Area Local, American Postal Workers Union,* No. C–1–81–776 (S.D.Ohio January 11, 1983) (unpublished opinion) (union bylaw excluded from candidacy members who failed to attend four of the previous 12 regularly scheduled union meetings). According to the Secretary, the attendance requirement in the *Cincinnati Area Local* case was coupled with a very restrictive excuse provision. Supplemental Statement at 9 n. 2.

Under Department of Labor regulations, the "availability and extent of excuse provisions" is a factor considered by the Secretary in deciding whether a meeting attendance requirement is reasonable. 29 C.F.R. § 452.38(a) (1985). So too, however, is "the impact of the rule, i.e., the number or percentage of members who would be rendered ineligible by its application." *Id.* The Supplemental Statement offers no rational or defensible explanation why the former factor can or should neutralize the latter when a very high percentage of the membership is excluded. In fact, as noted in the previous Memorandum Opinion, the courts have never accepted the argument that a liberal excuse provision can save an otherwise overly restrictive attendance requirement. 632 F.Supp. at 261. It is not rational for the Secretary to defend a union bylaw with a justification that has been rejected by the courts in cases where the Secretary challenged similar bylaws. *Cf. Shelley v. Brock,* at 1374 ("[The Secretary] must provide an explanation for his decision that is both clear and founded on grounds permitted by the statute or the case law.").

Furthermore, it is far from clear, contrary to the Secretary's implied position, that the absence of liberal excuse provisions is of overriding importance to courts reviewing meeting attendance requirements for reasonableness. While the government claims that the challenged bylaw in *Cincinnati Area Local* severely restricted allowable excuses, there is no indication in the district court's opinion that this had any influence on the decision striking down the election. The government also argues that "the lack of any excuse provision can render an otherwise reasonable meeting attendance requirement unreasonable." Supplemental Statement at 10 n. 3. In the case cited for this proposition, *Marshall v. Millwrights Local No. 1914,* 107 L.R.R.M. (BNA) 2938 (D.Ariz. 1981), the union bylaw, like the bylaw at issue in this case, required attendance at six meetings in the preceding year. No excused absences were given for any reason. The district court invalidated the challenged election, noting the lack of an excuse provision and that the bylaw excluded 88 percent of the membership from running for office. The opinion does not state or even imply that a liberal excuse provision would have saved the bylaw or one like it that renders ineligible for candidacy an even greater percentage of members.

In sum, the government's reliance on Local 6's excuse provision as reason for not filing suit is flawed and unsupported by caselaw or rational argument.

■ In addition, the only justification asserted on behalf of the bylaw, that "it can be viewed as encouraging participation in union affairs by potential candidates in the period immediately prior to the election," Supplemental Statement at 9, does not counterbalance its extreme antidemocratic effect. In part, the justification is simply a variation of, and is no more convincing than, the "ensures qualified candidates" rationale that was questioned in *Local 3489, United Steelworkers of America v. Usery,* 429 U.S. 305, 312, 97 S.Ct. 611, 616, 50

L.Ed.2d 502 (1977). *See Doyle v. Brock*, 632 F.Supp. at 260. It also is similarly undermined by the liberal excuse provision. Finally, the bylaw has totally failed to accomplish its asserted purpose in this instance, if participation in union affairs is measured by union meeting attendance.[2]

Unlike the district court in *Cincinnati Area Local*, this Court is not troubled that meeting attendance requirements, even those that do not seem especially onerous, are closely scrutinized by the courts and unfavorably received when they greatly restrict the free choice of the membership in choosing its leaders. Title IV of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 481 *et seq.*, was intended to guarantee free and democratic union elections, modeled on our national political elections. *Steelworkers*, 429 U.S. at 310, 97 S.Ct. at 615. Our political system does not impose artificial requirements on potential candidates to protect the public from unworthy or unqualified leadership. We do not, for example, empower political parties or some other commission or government board to administer an examination to candidates for national office and pass judgment on their familiarity with specified issues of national importance. Nor do we require local candidates to attend a specified number of town meetings or party caucuses to qualify for the ballot. Our democratic system assumes the ability of the populace to discern qualified and capable leaders, to "exercise common sense and judgment in casting their ballots." *Wirtz v. Hotel Employees Union, Local 6*, 391 U.S. 492, 504, 88 S.Ct. 1743, 1750, 20 L.Ed.2d 763 (1968). There are times when some may feel that such an assumption is not justified, but the freedom of all of us would be curtailed were we to abandon it.

■ This Court is well aware of the procedural posture of this matter, and the narrow standard of review permitted by *Bachowski*. *Shelley v. Brock*, at 1372 ("The standard by which the courts are to review the Secretary of Labor's decision under the LMRDA is quite deferential"). To find for the plaintiff, the Court must conclude not that it would overturn the election if challenged by the Secretary, but that the decision not to challenge the election was so irrational as to be arbitrary and capricious. *Cf. Balanoff v. Donovan*, 569 F.Supp. 966, 971 (N.D.Ill.1983). Thus, if this were a close case, testing the outer limits of current authority on meeting attendance requirements, the Court would uphold the Secretary's decision. But when the arguments asserted on behalf of the bylaw are so plainly contrary to the thrust of prior judicial rulings, the Secretary's reliance on them is incomprehensible and his decision must be rejected.

### C.

In the Court's view, two bites at this apple would appear to be more than adequate. This opinion constitutes a final determination that the Secretary's decision not to file suit on behalf of the plaintiff was and is arbitrary and capricious. The likelihood that a further statement of reasons would cause the Court to change its view of the Secretary's decision is so small, and the importance of rapid action so great,[3] that no further statement is requested, nor will it be considered. The government is encouraged to expedite its decision whether to appeal this ruling.[4]

An appropriate order will be entered.

---

**2.** Encouraging participation in union affairs would seem to be a worthy union objective. But there would also seem to be many ways to accomplish this objective without restricting the ranks of potential leadership in such a draconian fashion. In any event, participation in union affairs undoubtedly includes much more than attending membership meetings, and the members are perfectly able to determine if a candidate has demonstrated sufficient "participation" in the union to be a suitable officer.

**3.** The term of officers elected in the disputed June 1984 election is now two-thirds completed.

**4.** In *Bachowski*, the Supreme Court assumed that the Secretary would "proceed appropriately without the coercion of a court order." 421 U.S. at 576, 95 S.Ct. at 1862. The Secretary has stated that that assumption "was and is a reasonable one." Defendant's Response to the Court's Order of May 16, 1986, at 3. Given this measured and reasonable response to the Court's and the plaintiff's concern over the

proper remedy in this case, an order compelling the Secretary to file suit is unnecessary and would be inappropriate.