**Thomas DOYLE**

v.

**William BROCK, Secretary, Department of Labor, Appellant.**

**No. 86–5608.**

United States Court of Appeals,
District of Columbia Circuit.

Argued May 4, 1987.

Decided June 26, 1987.

Michael J. Ryan, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Royce C. Lamberth and R. Craig Lawrence, Asst. U.S. Attys., were on the brief, for appellant. Jeffrey Moon, Asst. U.S. Atty.,

Washington, D.C., also entered an appearance.

Paul Alan Levy, with whom Alan B. Morrison, Washington, D.C., was on the brief, for appellee.

Before EDWARDS and SILBERMAN, Circuit Judges, and KAUFMAN,* Senior District Judge for the District of Maryland.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

Dissenting opinion filed by Circuit Judge SILBERMAN.

HARRY T. EDWARDS, Circuit Judge:

This action was instituted by Thomas Doyle, a member of Local 6, International Brotherhood of Electrical Workers ("Local 6" or the "Union"), after the Secretary of Labor (the "Secretary") declined to file a suit to set aside a Union election. The District Court granted summary judgment in favor of Doyle, finding that the Secretary's Statement of Reasons justifying his decision not to sue was inadequate. The trial court directed the Secretary either to initiate suit or to provide a Supplemental Statement of Reasons explaining his decision not to sue. *Doyle v. Brock,* 632 F.Supp. 256, 263 (D.D.C.1986) ("*Doyle I* ") .

The Secretary issued a Supplemental Statement of Reasons for not initiating a suit against the Union on April 7, 1986. The District Court again found that, given that the Secretary had determined that the Union had an attendance requirement that precluded 97% of the membership from running for Union office, the Secretary had not adequately justified his decision not to sue to invalidate the election. The trial judge ordered the Secretary either to appeal the judgment or to file suit to set aside the election. *Doyle v. Brock,* 641 F.Supp. 223 (D.D.C.1986) ("*Doyle II* "). The Secretary has chosen to appeal the decision of the District Court.

We affirm the judgment of the District Court. The Secretary's decision not to sue is clearly at odds both with established

* Sitting by designation pursuant to 28 U.S.C. § 294(d) (1982).

legal precedent and with the Secretary's established litigation position with respect to the legality of union attendance requirements. As such, the Secretary's decision not to sue is arbitrary and capricious.

## I. BACKGROUND

In May, 1984, Doyle was nominated to be a candidate for the Executive Board of Local 6. The Union ruled that he was ineligible, however, because it determined that he had not attended at least one-half of the regular monthly meetings held by Local 6 in the year preceding the nominations. Doyle appealed the ruling using internal Union procedures, but the Union stood by its determination. Local 6 held its election on June 20, 1984.

Section 9(f) of Local 6's bylaws provides that a candidate must "attend at least one-half of the regular meetings of the Local Union for the twelve month period immediately preceding the month in which nominations are held." Under the Union's practices, a member receives credit for attending a meeting only if he or she signs an attendance register at the meeting. Doyle maintained that, although he signed the register at only two meetings during the year prior to his nomination, he was present at other meetings at which he had failed to sign the register.[1]

Doyle filed a complaint with the Department of Labor seeking to have the Secretary sue to invalidate the election. Doyle contended that the attendance requirement was not a "reasonable qualification[ ] uniformly imposed," and thus violated section 401(e) of the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 481(e) (1982). Doyle also claimed that the Union's practice of relying solely on the attendance register to establish attendance at Union meetings was not set forth in Local 6's constitution or bylaws, and that the membership therefore did not have "adequate notice ... of the precise terms of

the requirement" as mandated by 29 C.F.R. § 452.53 (1986). In December 1984, the Secretary provided Doyle with a Statement of Reasons for not filing suit; subsequently, in February 1985, Doyle received a letter from the Secretary expanding on the Statement of Reasons.

The Statement of Reasons disclosed the Secretary's view that "[t]he local's meeting attendance rule is reasonable on its face, particularly in view of the liberality of the excuse provisions." Statement of Reasons at 2, *reprinted in Doyle I*, 632 F.Supp. at 265. With respect to Doyle's second ground, although the Secretary's "investigation established some evidence, by no means conclusive, that [Doyle] attended ... six meetings in the year prior to nominations," the Secretary found that "the local did not violate its own constitution and bylaws or the [LMRDA]" by basing attendance at meetings solely on whether a member had signed the attendance register. *Id.*

In the February 1985 letter, the Secretary emphasized that, "if the Department concludes that [a] rule is reasonable, it will not initiate litigation solely because the rule's effect is to disqualify a vast percentage of the membership from running for union office." Letter from Richard G. Hunsucker to Paul Alan Levy (Feb. 15, 1985), *reprinted in Doyle I*, 632 F.Supp. at 266. The letter also stated that "the existence of a liberal excuse provision is often cited by the Department as a basis for concluding that a meeting attendance requirement is reasonable." *Id.*

Doyle then filed a suit in the District Court under the authority of *Dunlop v. Bachowski*, 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975), seeking judicial review of the Secretary's decision. The court granted summary judgment in favor of Doyle. The trial judge viewed the relevant issue as being whether the Secretary adequately explained why "the meeting attendance requirement, when viewed together with the 'liberal' excuse provision, [was]

---

1. Section 9(g) of Local 6's bylaws provides that, notwithstanding the attendance requirement of section 9(f), "[a] member may receive credit for meetings he is unable to attend, providing he files an acceptable excuse with the Executive Board within thirty days after the date of the meeting he fails to attend." In practice, the Executive Board has taken an expansive view of the range of acceptable excuses.

a 'reasonable qualification' for union office under section 401(e) of the LMRDA, when it [had] the effect of excluding 97 percent of the members from pursuing a candidacy." *Doyle I,* 632 F.Supp. at 260. The judge found that, "[g]iven that every recorded court decision in cases involving the exclusion of that high a percentage of members points in only one direction, and that the statement of reasons offer[s] no rational explanation for why this case is any different, the Secretary's decision not to move to overturn the election can only be viewed as so irrational as to be arbitrary and capricious." *Id.* at 262.

The trial judge pointed to language in *Local 3489, United Steelworkers v. Usery,* 429 U.S. 305, 310, 97 S.Ct. 611, 615, 50 L.Ed.2d 502 (1977), in which the Supreme Court held that "an attendance requirement that results in the exclusion of 96.5% of the members from the candidacy for union office hardly seems to be a 'reasonable qualification' consistent with the goal of free and democratic elections." He then pointed out that "[t]he courts ... have never accepted the argument that liberal excuse provisions can save requirements that exclude the greater part of a union's membership." *Doyle I,* 632 F.Supp. at 261. The judge noted that, although the *Steelworkers* Court endorsed the Secretary's practice of taking a flexible case-by-case approach in assessing attendance requirements, "[t]he Secretary's 'flexibility' ... does not extend to ignoring applicable case-law." *Id.* at 262 n. 8.

The trial judge also found that the Secretary had failed to explain why he was not filing suit based on the Union's practice of basing attendance at meetings solely on the attendance register. According to the Secretary's regulations, the Union must provide members with "adequate advance notice ... of the precise terms of the requirement." 29 C.F.R. § 452.53 (1986). Absent a finding that adequate notice of the practice was given, the judge held that the Secretary could not, in accordance with his own regulations, decline to sue. *Doyle I,* 632 F.Supp. at 263.

The District Court directed the Secretary either to initiate suit against the Union or to provide a Supplemental Statement of Reasons for not doing so. *Id.* The Secretary pursued the latter option. In the Secretary's Supplemental Statement of Reasons, he found that, although only fifty-six members of Local 6 (3%) were qualified to run for office as a result of the application of the attendance rule, "the requirement does not violate section 401(e) of the LMRDA, 28 U.S.C. § 481(e), solely because a substantial number of the Local's members elected not to meet the requirements." Supplemental Statement of Reasons at 15, *reprinted in* Appendix for Appellant ("Appellant App.") 65. The Secretary stated that "[w]here ... no objective reason is found that any aspect of the qualification requirement, as applied, precluded members from qualifying," the impact of the requirement "is not in itself a sufficient reason for finding the rule unreasonable." *Id.* at 13, *reprinted in* Appellant App. 63.

Thus, the Secretary appeared to take the position that the effect of the requirement—precluding 97% of the membership of the Union from running for office—was a relevant but not a sufficient basis for challenging the requirement. The Secretary also suggested that the requirement was not unlawful because "it [could] be viewed as encouraging participation in union affairs by potential candidates in the period immediately prior to the election." *Id.* at 9, *reprinted in* Appellant App. 59.

Turning to the Union's practice of relying on the attendance register to establish attendance at meetings, the Secretary explained that, because this "was a well-established practice, known to the membership," *id.* at 3, *reprinted in* Appellant App. 53, the members had "adequate notice ... of the precise terms of the requirement."

The District Court agreed that the Secretary's decision not to sue based on the attendance register claim was not irrational. *Doyle II,* 641 F.Supp. at 225. However, the trial court again concluded that the Secretary had "failed to offer a rational explanation consistent with current case-law for the refusal to file suit" based on

the attendance requirement. *Id.* The judge found that the Secretary's explanation "[did] little more than replow in more detail ground already covered in the initial statement of reasons." *Id.* at 226. The judge found that the Secretary had placed great weight on the availability of the liberal excuse policy to mitigate the harshness of the attendance requirement. However, he also found that "[t]he Supplemental Statement offers no rational or defensible explanation why the [excuse provisions] can or should neutralize the [impact of the requirement] when a very high percentage of the membership is excluded." *Id.* He again emphasized that "[i]t is not rational for the Secretary to defend a union bylaw with a justification that has been rejected by the courts in cases where the Secretary challenged similar bylaws." *Id.* He concluded that "the government's reliance on Local 6's excuse provision as reason for not filing suit is flawed and unsupported by caselaw or rational argument." *Id.*

The District Court did acknowledge that a justification could be provided by showing a Union purpose outweighing the extreme antidemocratic effect of the requirement, but found that no valid justification was offered. The one justification asserted—encouraging participation in Union affairs by potential candidates—was seen as "simply a variation of, and ... no more convincing than, the 'ensures qualified candidates' rationale that was questioned in [*Steelworkers* ]." *Id.* Moreover, the trial judge found that the attendance requirement did not serve this goal, both because it failed to generate high attendance at meetings, and because the availability of the liberal excuse policy allowed potential candidates to qualify for office without actually attending meetings. *Id.* at 227.

The District Court judge concluded with the observation that "when the arguments asserted on behalf of the bylaw are so plainly contrary to the thrust of prior judicial rulings, the Secretary's reliance on them is incomprehensible and his decision must be rejected." *Id.*

## II. ANALYSIS

### A. *Scope of Judicial Review*

It is well settled that the decision of the Secretary not to file suit under the LMRDA is subject to judicial review under the standard specified in 5 U.S.C. § 706(2)(A) (1982). *Dunlop v. Bachowski,* 421 U.S. 560, 566, 95 S.Ct. 1851, 1857, 44 L.Ed.2d 377 (1975). So, although we may not "substitute [our] judgment for the decision of the Secretary not to bring suit," we must " 'determine with some measure of confidence whether or not the discretion [not to sue], which ... remains in the Secretary, has been exercised in a manner that is neither arbitrary nor capricious.' " *Id.* at 571, 95 S.Ct. at 1860 (quoting *DeVito v. Shultz,* 300 F.Supp. 381, 383 (D.D.C.1969)). Thus, "[e]xcept in what must be the rare case, the court's review should be confined to examination of the 'reasons' statement, and the determination whether the statement, without more, evinces that the Secretary's decision is so irrational as to constitute the decision arbitrary or capricious." *Id.* at 572–73, 95 S.Ct. at 1860. However, the "statement of reasons must be adequate to enable the court to determine whether the Secretary's decision was reached for an impermissible reason or no reason at all." *Id.* at 573, 95 S.Ct. at 1861.

The continuing significance of section 706(2)(A) review under *Bachowski* was recently highlighted by the Supreme Court in *Heckler v. Chaney,* 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985). In *Heckler,* the Court explained that "the statute being administered [in *Bachowski* ] quite clearly withdrew discretion from the agency and provided guidelines for exercise of its enforcement power." *Id.* at 834, 105 S.Ct. at 1657. So, if there is "probable cause to believe that a violation of [Title IV] has occurred ..., [the Secretary] *shall* ... bring a civil action against the labor organization." Section 402(b) of the LMRDA, 29 U.S.C. § 482(b) (1982) (emphasis added).[2]

---

**2.** In his brief, the Secretary argues that "the District Court has ... confused impact with

violation," and that "[t]he question of effect or impact is not relevant unless a violation is

■ The cases in this circuit confirm that standard section 706(2)(A) principles apply to judicial review of the Secretary's legal conclusions. For example, in *Shelley v. Brock*, 793 F.2d 1368, 1374 (D.C. Cir. 1986), we stated that "[t]he Secretary is not charged with announcing his feelings about union elections. Rather, the Secretary is obligated to examine union elections and determine if they fall foul of the [LRMDA's] dictates." The Secretary's reasons for not suing must be "founded on *grounds permitted by the statute or the case law.*" *Id.* (emphasis added).[3]

## B. The Secretary's Decision

■ The Secretary's reasons for not suing must be "founded on grounds permitted by the statute or the case law." *Shelley v. Brock*, 793 F.2d at 1374. Because the Secretary's reasons for declining to sue here have been rejected by the case law, we conclude that the Secretary's decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[4]

We begin our analysis with *Local 3489, United Steelworkers v. Usery*, 429 U.S. 305, 97 S.Ct. 611, 50 L.Ed.2d 502 (1977). In *Steelworkers*, the Court invalidated a provision requiring candidates for union offices to have attended at least one-half of the regular meetings during the three years prior to the election. As in the case

before us, this requirement rendered 97% of the membership ineligible to run for office.

The *Steelworkers* Court first "identified the considerations pertinent to the determination whether [an] attendance rule violates § 401(e)." *Id.* 429 U.S. at 308, 97 S.Ct. at 614. It stated that "[t]he basic objective of Title IV of the LMRDA is to guarantee 'free and democratic' union elections modeled on 'political elections in this country' where 'the assumption is that voters will exercise common sense and judgment in casting their ballots.' " *Id.* at 309, 97 S.Ct. at 614 (quoting *Wirtz v. Hotel, Motel & Club Employees Union, Local 6*, 391 U.S. 492, 504, 88 S.Ct. 1743, 1750, 20 L.Ed.2d 763 (1968) (*"Hotel Employees"*)). Accordingly, " 'Congress plainly did not intend that the authorization ... of "reasonable qualifications ..." should be given a broad reach. The contrary is implicit in the legislative history of the section and in its wording....' " *Id.* (deletions made by the Court) (quoting *Hotel Employees*, 391 U.S. at 499, 88 S.Ct. at 1748). The Court described *Hotel Employees* as "expressly" holding that the LMRDA's goal of "free and democratic" union elections "was, seriously impaired by candidacy qualifications which substantially deplete the ranks of those who might run in opposition to incumbents." *Id.* 429 U.S. at 309–10, 97 S.Ct. at 615. Turning to the requirement

found." Brief for Appellant at 7. However, counsel for the Secretary admitted at oral argument that it was he, in his brief, who was confused. The Secretary's determination of the effect of the qualification on the outcome of the election is different from whether the antidemocratic effect of the qualification renders it unreasonable under the LMRDA. Although courts might defer to the Secretary's factual conclusion on the effect of the requirement on the election, see *Bachowski*, 421 U.S. at 573, 95 S.Ct. at 1860–61, whether the antidemocratic effect of the requirement renders the requirement unlawful presents a legal question fully reviewable under the standard set forth in 5 U.S.C. § 706(2)(A) (1982).

3. The Secretary suggests that it was improper for the District Court to consider the background data produced by the Secretary in his review of Doyle's complaint. However, the only way a court can assess the Secretary's actions is to examine his statement of reasons in relation

to the evidence before the Secretary. *See, e.g., Donovan v. Local 6, Washington Teachers' Union*, 747 F.2d 711, 718–19 (D.C.Cir.1984) (finding the Secretary's statement of reasons inadequate in light of affidavits submitted); *compare Balanoff v. Donovan*, 569 F.Supp. 966, 968 n. 2 (N.D.Ill.1983) (refusing to consider evidence not before the Secretary) *with Balanoff v. Donovan*, 569 F.Supp. 962, 964 (N.D.Ill.1983) (considering documents that were part of the record considered by the Secretary).

4. In reaching this conclusion, we have assumed the Secretary's factual findings to be true and have considered only the reasons for declining to sue advanced by the Secretary. In the course of a lawsuit initiated against Local 6 by the Secretary, the Union would be free to challenge these factual conclusions, to proffer additional justifications in support of its attendance requirement and to raise any appropriate legal theories in support of its actions.

at issue in *Steelworkers*, the Court concluded that, "[l]ike the bylaws in *Hotel Employees*, an attendance requirement that results in the exclusion of 96.5% of the members from candidacy for union office hardly seems to be a 'reasonable qualification' consistent with the goal of free and democratic elections." *Id.* at 310, 97 S.Ct. at 615.

Thus, the Secretary's task in the instant case is to explain why, given the Supreme Court's clear holding in *Steelworkers*, he has declined to bring suit to invalidate a similar requirement which has a similar effect on the percentage of membership eligible to run for Union office. Because the reasons advanced by Secretary for not filing suit are foreclosed by *Steelworkers*, they must be rejected.

First, the Secretary argues that the Union's requirement is easier to meet, because it requires attendance at only half of the meetings during the past *year*, whereas the *Steelworkers* bylaw required attendance at half of the meetings over the past *three years*. Moreover, he argues that the availability of liberal excuse provisions makes the requirement even less onerous. Yet, the *Steelworkers* Court specifically rejected the argument that the reasonableness of a requirement is to be judged by the burdensomeness of compliance: "[T]his argument misconceives the evil at which the statute aims. We must judge the eligibility rule not by the burden it imposes on the individual candidate but by its *effect* on free and democratic processes of union government." *Id.* at 310 n. 6, 97 S.Ct. at 615 n. 6 (emphasis added); *see Marshall v. Local 1402, Int'l Longshoremen's Ass'n*, 617 F.2d 96, 98 (5th Cir.), *cert. denied,* 449 U.S. 869, 101 S.Ct. 295, 66 L.Ed.2d 88 (1980); *see also Donovan v. Dallas Area Local of the Am. Postal Workers Union*,

110 L.R.R.M. (BNA) 2510, 2512 (N.D. Tex. 1981) ("[T]he Court holds as a matter of law that the attendance requirement ... is an unreasonable qualification ... since it disqualifies over 97% of the total membership of the Union...."); *Marshall v. Millwrights Local Union No. 1914*, 107 L.R.R.M. (BNA) 2938, 2942 (D. Ariz.1981) (requirement that candidates attend one-half of the union meetings during the year preceding nomination violates § 401(e) of the LMRDA when its effect is to exclude 88% of the membership from running for office); *Marshall v. New York Metro Area Postal Union*, 105 L.R.R.M. (BNA) 2419, 2422 n. 3 (S.D.N.Y.1980) ("The Supreme Court held by implication [in *Steelworkers* ] that [the] presence [of excuse provisions] could not save the attendance requirement.").

Next, the Secretary contends that "[t]he Local's requirement ... is not stringent or uncommon among unions, nor is the impact unusual," and that "[i]t is probable that many, if not most, existing meeting attendance rules would be found unreasonable if tested by impact alone." Supplemental Statement of Reasons at 15, *reprinted in* Appellant App. 65.[5] Accordingly, the Secretary maintains that he will only sue to set aside elections based on attendance rules where there is "some factor or factors in the rule or in its application, in addition to impact, that ma[kes] the rule unreasonable." *Id.* at 14, *reprinted in* Appellant App. 64. The Secretary relies on the fact that, in *Steelworkers*, the Court did not adopt an approach making a qualification that eliminated a high percentage of the membership from serving as officers *per se* unreasonable, and that the *Steelworkers* Court seemed to approve of the Secretary's case-by-case approach to evaluating attendance requirements. *See Steel-*

---

5. We do not understand why the typicality of a requirement that has a large antidemocratic effect somehow makes it a reasonable requirement under the LMRDA. "Whether a particular qualification is 'reasonable' within the meaning of § 401(e) must ... 'be measured in terms of its consistency with the [LMRDA's] command to unions to conduct "free and democratic" union elections.' " *Steelworkers*, 429 U.S. at 309, 97 S.Ct. at 614–15 (quoting *Hotel Employees*, 391

U.S. at 499, 88 S.Ct. at 1748). The Secretary also argues that placing such heavy emphasis on impact would result in the same qualification being deemed reasonable or unreasonable depending on the attendance patterns of the membership of the union in question. This argument, however, is simply a variant of one rejected in *Steelworkers*. *See id.* 429 U.S. at 313–14, 97 S.Ct. at 616–17. We therefore reject it here.

*workers,* 429 U.S. at 313, 97 S.Ct. at 616. Once again, however, the Secretary's conclusion is clearly at odds with *Steelworkers.*

■ It is true that the *Steelworkers* Court did not adopt a *per se* effects test. Nonetheless, it came "close to doing so. The fact that 96.5% of Local 3489's members chose not to comply with its rule was given controlling weight." *Id.* at 315, 97 S.Ct. at 617 (Powell, J., dissenting). Thus, although one must read *Steelworkers* as holding that attendance requirements are to be subjected to a case-by-case analysis, the analysis is limited to determining only if "the anti-democratic *effects* of the meeting-attendance rule outweigh the *interests* urged in its support." *Id.* at 310, 97 S.Ct. at 615 (emphasis added). There is *no* basis, in *Steelworkers* or in any other case, for the notion that an attendance requirement that has a large antidemocratic effect can be reasonable on its face, and that some additional factor is necessary to find the requirement violative of the LMRDA. *See Donovan v. Illinois Educ. Ass'n,* 667 F.2d 638, 641 (7th Cir.1982) ("We have found no recent decision upholding a candidacy qualification that excluded a majority of the union's membership, however reasonable the qualification may have seemed."). "Plainly, given the objectives of Title IV, a candidacy limitation which renders [97%] of union members ineligible for office can hardly be a 'reasonable qualification.'" *Hotel Employees,* 391 U.S. at 502, 88 S.Ct. at 1749.[6]

The Department of Labor's regulations, cited approvingly in *Steelworkers,* do not suggest otherwise. A fair reading of 29 C.F.R. § 452.38 (1986) suggests that an attendance requirement cannot be reasonable on its face, but that "[i]ts reasonableness must be gauged in the light of all the circumstances of the particular case, including . . . the impact of the rule." Indeed, the passage from *Hotel Employees* stating that "[p]lainly, given the objectives of Title IV, a candidacy limitation which renders 93% of union members ineligible for office can hardly claim to be a 'reasonable qualification,'" 391 U.S. at 502, 88 S.Ct. at 1749, is quoted in a footnote to the regulation. 29 C.F.R. § 452.38 n. 25. Moreover, there is not a hint in the regulation that some "objective" factor other than impact must exist in order for a requirement to violate the LMRDA. In fact, it appears that the "all the circumstances" language is included to help assess the reasonableness of a requirement in which the antidemocratic effect is not as dramatic as the one in *Steelworkers* or the instant case. *See, e.g., Donovan v. Local Union No. 120, Laborers' Int'l Union,* 683 F.2d 1095, 1103 (7th Cir.1982) ("Exclusion of a high proportion of the membership is only one way a qualification may have an antidemocratic effect.").

■ It is thus clear that the only way to justify a requirement that has a large antidemocratic effect is to show that the requirement serves valid union interests. *See Steelworkers,* 429 U.S. at 310, 97 S.Ct. at 615. The only such justification offered by the Secretary in the instant case is that the requirement "can be viewed as encouraging participation in union affairs by potential candidates in the period immediately prior to the election." Supplemental Statement of Reasons at 9, *reprinted in* Appellant App. 59. However, just as in *Steelworkers,* "the rule has plainly not served these goals." 429 U.S. at 312, 97 S.Ct. at 616. We find the *Steelworkers* Court's discussion on this point to be dispositive:

As for assuring the election of knowledgeable and dedicated leaders, the election provisions of the LMRDA express a congressional determination that the best means to this end is to leave the choice of leaders to the membership in open democratic elections, unfettered by arbitrary exclusions. Pursuing this goal by excluding the bulk of the membership from eligibility for office, and thus limiting the possibility of dissident candidacies, runs

---

6. Thus, in this case, we find the distinctions between a three-year and a one-year attendance requirement to be irrelevant, given the large antidemocratic effect of the one-year requirement. The differences might be relevant in assessing a requirement that did not have as large an impact on union democracy; however, this issue is not before us in this litigation.

directly counter to the basic premise of the statute. We therefore conclude that Congress, in guaranteeing every union member the opportunity to hold office, subject only to "reasonable qualifications," disabled unions from establishing eligibility qualifications as sharply restrictive of the openness of the union political processes as is [the Union's] attendance rule.

*Id.* at 312–13, 97 S.Ct. at 616.

Even if we were to seriously entertain the idea that the attendance requirement was designed to "encourag[e] participation in union affairs by potential candidates," the very existence of the liberal excuse provisions relied on by the Secretary to support the requirement severely *undercuts* both the legitimacy of the claim and the effectiveness of the provision in achieving its alleged objective. Clearly, the requirement does not encourage member participation when a member need not actually attend *any* meetings in order to meet the requirement. *Accord Marshall v. Local 1402, Int'l Longshoremen's Ass'n,* 617 F.2d 96, 98 (5th Cir.), *cert. denied,* 449 U.S. 869, 101 S.Ct. 205, 66 L.Ed.2d 88 (1980); *Usery v. Local Div. 1205, Amalgamated Transit Union,* 545 F.2d 1300, 1304 n. 3 (1st Cir.1976).

Not only are the Secretary's reasons for declining to sue not "founded on grounds permitted by the statute or the case law," the Secretary's decision runs counter to his litigation positions in other cases. For example, in his Memorandum in Support of Plaintiff's Motion for Summary Judgment in *Brock v. Local 130-A, Aluminum, Brick & Glass Workers International Union,* 124 L.R.R.M. (BNA) 2869 (W.D.Ky. 1986) [Available on WESTLAW, DCT database], the Secretary pointed out that, following *Steelworkers,* "the courts have consistently ruled that meeting attendance requirements ... which disqualify a large percentage of the union's membership from running for union office are violative of the [LMRDA]." Similarly, in his Memorandum in Support of Plaintiff's Motion for Summary Judgment in *Donovan v. Dallas Area Local of the American Postal Workers Union,* 110 L.R.R.M. (BNA) 2510 (N.D.Tex. 1981), the Secretary stated that "[a] qualification for nomination and election to office which renders 93% of the members in good standing ineligible for office is not a reasonable qualification."

■ We do not mean to suggest that, to the extent that these briefs indicate a litigation position, the Secretary is "bound" to follow the identical course of action in this case. However, it seems clear to us that, where the Secretary pursues a course contrary to his prior practice, he is obliged to explain his actions more thoroughly than if he were following a consistent pattern. *See International Bhd. of Elec. Workers, Local Union No. 474 v. NLRB,* 814 F.2d 697, 712 n. 65 (D.C.Cir.1987); *Oil, Chemical & Atomic Workers Int'l Union v. NLRB,* 806 F.2d 269, 273–74 (D.C.Cir.1986); *International Ladies' Garment Workers' Union v. Donovan,* 722 F.2d 795, 813–15 (D.C.Cir.1983). The Secretary has failed to explain, either in his Statement of Reasons or in his Supplemental Statement of Reasons, why he departed from his prior practice.[7]

### III. CONCLUSION

The Secretary has failed to provide a rational explanation for his decision not to file suit to invalidate a Union election based on a meeting attendance requirement that has a large antidemocratic effect. His proffered reasons are either undercut or rejected by cases such as *Steelworkers,* and his decision appears to run contrary to the Department's regulations and to the position he has taken in other cases involving attendance requirements. Accordingly,

---

7. The Secretary argues that these and other examples of the Secretary's litigation positions in other cases are "aberration[s]" and, in any event, are not properly before the court. Reply Brief at 5–6. However, the Secretary has not cited *any* case demonstrating "the Secretary's consistent approach of authorizing suit ... not based solely on impact." *Id.* at 6. It is clear to us that the Secretary's view of the LMRDA, as expressed in his briefs before the federal courts in other cases, is relevant in discerning the rationality of his decision not to sue in this case. We see no reason not to take notice of the Secretary's prior practice here. We stress, however, that the principal basis for our decision here is that the Secretary's reasons for declining to sue are not founded on grounds permitted by the statute or the case law.

the decision of the District Court is affirmed. In styling its order, the District Court took note of the Secretary's in-court affirmation that the assumption in *Bachowski* that the Secretary would "proceed appropriately without the coercion of a court order," 421 U.S. at 576, 95 S.Ct. at 1862, "was and is a reasonable one." *Doyle II,* 641 F.Supp. at 227 n. 4. At oral argument, the Secretary again indicated that he was prepared to "proceed appropriately" if we affirmed the decision of the District Court. We accept these affirmations as adequate to ensure that the Secretary will indeed proceed appropriately without the necessity of further order of this court.

*Affirmed.*

SILBERMAN, Circuit Judge, dissenting:

In *Dunlop v. Bachowski,* 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975), the Supreme Court cautioned that when reviewing the Secretary of Labor's determination not to sue to set aside a union election "it is not the function of the Court to determine whether or not the case should be brought or what its outcome would be." *Id.* at 573, 95 S.Ct. at 1860. The majority opinion quite clearly fuses both questions and, without hesitation, decides them; thereby exceeding the boundaries of legitimate judicial review. Had the Secretary brought this suit, I suspect I could find common ground with the majority, but since that is not the case I respectfully dissent.

The Secretary's decision not to sue is an exercise of discretion entrusted him by Congress; it is to be tested by a reviewing court upon a submission of the Secretary's statement of reasons, only under the arbitrary and capricious standard and, as *Bachowski* makes clear, a particularly narrow arbitrary and capricious standard at that. *See id.* at 572–73, 95 S.Ct. at 1860. Here, unlike *Bachowski,* the Secretary declined to sue because be concluded *no violation of law occurred.*[1] The Secretary distinguished the fifty percent meeting attendance requirement at issue here from that presented in *Local 3489, United Steelworkers v. Usery,* 429 U.S. 305, 97 S.Ct. 611, 50 L.Ed.2d 502 (1977), on grounds that it applies only to the year before the election, whereas in *Steelworkers* the requirement applied for three years before the election. Since a candidate for office could easily comply with the requirement (particularly in light of its lenient excuse provision)[2] by disclosing his intentions as late as six months before the election, the Secretary believed the attendance requirement a "reasonable one" even though it turns out to have disqualified 97% of the membership.

The majority opinion rests on the proposition that the Secretary's reading of *Steelworkers* is not only wrong but irresponsible because *Steelworkers de facto* holds that an attendance requirement that disqualified 96.5% of the members is per se unlawful. The difficulty with the majority opinion, it seems to me, is that the Court in *Steelworkers* assiduously avoided the holding that my colleagues ascribe to it. Indeed, the primary support for the majority's reading comes from the dissenting opinion of Justice Powell, and even he only claimed the majority "comes close" to adopting a per se rule. *Id.* at 315, 97 S.Ct.

---

1. In *Bachowski,* the Secretary had received complaints about similar illegal United Steelworkers of America election practices in six districts. The Secretary found, however, that in only two districts the violations had affected the outcome of the election and declined to bring suit with respect to the elections in the other four districts. *Bachowski,* 421 U.S. at 563, 95 S.Ct. at 1855–56.

2. The majority contends that the liberal excuse provision to the attendance rules undermines the rule's purpose. In truth, the excuse provision cuts both ways. If we focus on whether the attendance requirement serves its purpose of encouraging attendance, then perhaps the

excuse provision undercuts that purpose. But if we focus on whether the attendance rule places an unreasonable burden on prospective candidates, then the excuse provision probably supports the legitimacy of the rule because it enables members to run for office even if they cannot make all the necessary meetings. In any event, the Secretary found that the actual effect of the excuse provision in this case was minimal since it was rarely used. In light of the considerable deference we must give the Secretary's judgment, I believe the majority errs by rejecting the Secretary's position on the relevance of the excuse provision.

at 617 (Powell, J., dissenting). The *Steelworkers* majority, to be sure, strongly emphasized the importance of the percentage of members disqualified, but the Court's underlying concern was the degree to which the rule actually excluded members who would have run for office but for the attendance requirement. In response to the union's argument that the attendance rule was not antidemocratic because prospective candidates could qualify simply by attending meetings, the Court endorsed the Secretary's informed view that to require a member to decide upon a potential candidacy as long as eighteen months before an election—before issues emerge that could generate opposition—would unduly discourage candidacies. *Id.* at 311 & n. 7, 97 S.Ct. at 615 & n. 7. The Court emphasized that "member interest in changing union leadership is likely to be at its highest only shortly before election." *Id.* at 311, 97 S.Ct. at 615. Implicitly at least, the Court thereby suggested that an attendance requirement that took operative effect only shortly before an election might stand on surer footing. Indeed, the Court in approving the Secretary's case-by-case approach to attendance requirements noted that that policy—which remains unchanged—weighed, *inter alia*, "the period of time over which the requirement extends." *Id.* at 313, 97 S.Ct. at 616–17. I therefore think it impossible to conclude that *Steelworkers*—a case in which the Secretary sued and the Court *deferred* to the Secretary's interpretation—forecloses the Secretary's position here.

If I am correct about *Steelworkers*, the analytical structure of the majority opinion collapses. Absent precise and binding precedent, the court lacks adequate grounds to reject the Secretary's interpretation of the statute as capricious. We should bear in mind that the statutory provision in question, section 401(e), 29 U.S.C. § 481(e) (1982), guarantees candidates only a "reasonable opportunity" for nomination and even that opportunity is subject to "reasonable qualifications uniformly imposed." If the Secretary brought suit we would surely be obliged, as was the Supreme Court in *Steelworkers*, to pay deference to the Secretary's view of what is reasonable; courts, particularly federal courts, are not normally thought authorized to apply their own standards of reasonableness. To me, it follows a fortiori that the Secretary's decision not to sue on grounds that the attendance requirement is reasonable should be paid at least the same—if not more—deference. But the majority does more than simply fail to give sufficient deference to the Secretary. It also eviscerates the "reasonableness" standard of section 401(e). The logic of the majority's opinion would require the Secretary to sue to overturn an election if a union attendance requirement, no matter how innocuous, turned out in hindsight to disqualify some percentage (presumably in excess of 90%) of the membership.[3] I am not sure that even if the Secretary wished to take that position it would be a reasonable interpretation of the statute.

The panel majority puts less weight upon, but nevertheless also relies on, fragments in briefs filed by the Secretary in other cases to support its holding here. I think that is plainly improper. The court is thereby drawn into supervision of the Secretary's litigating strategy. The Supreme Court has recognized the constitutional delicacy of this unusual kind of judicial role and has determined that absent unusual circumstances, not here present, review should be "confined to examinations of the 'reasons' statement, and the determination whether the statement, without more, evinces that the Secretary's discretion is so irrational as to constitute the decision arbitrary or capricious." *Bachowski*, 421 U.S. at 572–73, 95 S.Ct. at 1860.

We are treading on very thin judicial ice. I very much doubt the constitutional propriety of an order directing the Secretary to file suit, *cf. Smith v. United States*, 375 F.2d 243, 246–48 (5th Cir.1967); *United States v. Cox*, 342 F.2d 167, 171–73 (5th Cir.1965); it seems the case or controversy

---

**3.** Without any case support, the majority opinion further constrains the Secretary's judgment of what is reasonable under the statute by holding that it is impermissible for the Secretary to even consider whether a particular qualification is widespread within the labor movement. *See* Maj. Op. n. 5. Nowhere do I see a manifestation of such a draconian congressional intent.

would then be between the court and the union, and we might be required to conduct the litigation before ourselves. So in that respect, it is not at all clear to me what counsel meant, or should have meant, when he said at oral argument that if we affirmed the district court the Secretary would "proceed appropriately." The district court and majority opinion only establish, in my view, that if any of those judges had been Secretary of Labor they would have sued. (I might have as well.) The executive branch might well conclude reasonably that this opinion constitutes intolerable judicial overreaching.