842 F.2d 70
 127 L.R.R.M. (BNA) 3070, 108 Lab.Cas. P 10,380
 William E. BROCK, Secretary of Labor, United States
Department of Labor, Plaintiff-Appellant,
v.
INTERNATIONAL ORGANIZATION OF MASTERS, MATES AND PILOTS;
International Marine Division of the International
Longshoremen's Association, AFL-CIO
(IOMMP), Defendants-Appellees.
 No. 87-2035.
 United States Court of Appeals,
Fourth Circuit.
 Argued Jan. 8, 1988.
Decided March 21, 1988.
 
 Nathaniel I. Spiller, U.S. Dept. of Labor (George R. Salem, Sol. of Labor, Allen H. Feldman, Associate Sol., for Sp. Appellate and Supreme Court Litigation, Steven J. Mandel, Washington, D.C., Counsel for Appellate Litigation, on brief), for plaintiff-appellant.
 W. Michel Pierson (Robert L. Pierson, Baltimore, Md., Burton M. Epstein, on brief), for defendants-appellees.
 Before WINTER, Chief Judge, and PHILLIPS and WILKINS, Circuit Judges.
 PER CURIAM:
 
 
 1
 The District Court determined that the International Organization of Masters, Mates, and Pilots ("the union") did not violate the Labor-Management Reporting and Disclosure Act of 1959 ("the Act"), 29 U.S.C. Sec. 401 et seq., and in particular Sec. 481(e), in its 1984 election of officers, by disqualifying members from seeking office if they had not paid their quarterly union dues on time in any of the 24 months prior to nomination, subject to a grace period for certain members. Its determination was predicated upon the ruling that the union's good standing requirement did not violate Sec. 401(e) of the Act, 29 U.S.C. Sec. 481(e), which guarantees that every union member in good standing shall have the right to be a candidate and to hold union office, subject to "reasonable qualifications uniformly imposed." The district court declined to abide by the Secretary's regulation, 29 C.F.R. Sec. 452.37(b), which states that "[a] requirement of continuous good standing based on punctual payment of dues will be considered a reasonable qualification only if (1) it provides a reasonable grace period during which members may make up missed payments without loss of eligibility for office, and (2) the period of time involved is reasonable." (footnote eliminated) The district court ruled that the quoted language is an incorrect and overbroad interpretation of Sec. 401(e). It further ruled that the union had not violated the Act because the good standing requirement is reasonable and uniformly imposed.
 
 
 2
 The Secretary, who had brought the suit, appeals, and we affirm.
 
 I.
 
 3
 In a footnote to his regulation, 29 C.F.R. Sec. 452.37(b), the Secretary referred to two cases, Wirtz v. Local Unions No. 9, 9-A and 9-B, International Union of Operating Engineers, 254 F.Supp. 980 (D.Colo.1965), aff'd, 366 F.2d 911 (10 Cir.1966), vacated as moot, 387 U.S. 96, 87 S.Ct. 1505, 18 L.Ed.2d 586 (1967), and Goldberg v. Amarillo General Drivers, Teamsters Local 577, 214 F.Supp. 74 (N.D.Tex.1963), apparently to justify the language he promulgated.
 
 
 4
 In Local Unions No. 9, the court invalidated a provision of the union constitution that disqualified members from running for union office if they had not met the deadline for payment of dues for each quarter of the year preceding the election. This provision effectively barred 87 percent of the union members from becoming candidates, many of whom were unemployed during the winter months and would have found the payment of dues a hardship.
 
 
 5
 In Amarillo General Drivers, approximately 40 percent of the union membership was disqualified from candidacy because of a failure to pay dues by the prescribed deadline. Each of the aggrieved members, however, paid his dues through an employee checkoff agreement with the employer, and thus had no control over the date of dues payment. This disqualification was also held invalid.
 
 
 6
 The Secretary's regulation thus extends the holdings in these two cases to all situations where a union requires continuous good standing over a certain period of time for all candidates for union office, but fails to provide a grace period for the payment of dues to maintain good standing. The Secretary clearly seeks to protect a broader class of union members than those affected by employer checkoff, or seasonal unemployment. Moreover, the Secretary disregards as a relevant factor the number of candidates actually or potentially disqualified from running for office based on the operation of the good standing requirement, i.e., whether few, many or none are affected.
 
 
 7
 The current version of Sec. 452.37(b), promulgated in 1973, is in sharp contrast to the Secretary's previous regulation pertaining to reasonable qualifications, 29 C.F.R. Sec. 452.7(b), (adopted in 1963), which conceded the lack of a precise definition for reasonableness:
 
 
 8
 For example, a requirement that to be eligible to be a candidate for office an individual must have been a "member in good standing" for a prescribed period of time, such as two or three years, would not be, in many instances, an unreasonable qualification. However, should the actual effect of such qualification in a particular case be to disqualify from holding office all but a handful of the labor organization's members, its reasonableness would be subject to serious question.
 
 
 9
 Despite the earlier recognition of the flexible nature of the Act's use of "reasonable qualifications" of payment of dues to show continuous good standing, the Secretary advances no rationale for the existence of a grace period as a condition of reasonableness other than his reliance on Local Unions No. 9, and Amarillo General Drivers.
 
 
 10
 We recognize fully that deference should be accorded to the Secretary's interpretation of the statute "unless there are compelling indications that it is wrong." Red Lion Broadcasting Co. v. Federal Communications Commission, 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371 (1969). This deference extends to "interpretations of ambiguities in regulatory language ..." Monger v. Bowen, 817 F.2d 15, 18 (4 Cir.1987). However, "an agency interpretation of a relevant provision which conflicts with the agency's earlier interpretation is 'entitled to considerably less deference' than a consistently held agency view." Immigration and Naturalization Service v. Cardoza-Fonseca, --- U.S. ----, 107 S.Ct. 1207, 1221 n. 30, 94 L.Ed.2d 434, 457 n. 30 (1987), quoting Watt v. Alaska, 451 U.S. 259, 273, 101 S.Ct. 1673, 1681, 68 L.Ed.2d 80 (1981).
 
 
 11
 We conclude that the Secretary's current regulation is a plainly erroneous interpretation of Sec. 401(e) of the Act, in that it attempts to condition reasonableness on a per se rule, without reference to the circumstances of the particular union, which in this case differ dramatically from those found in Amarillo General Drivers and Local Unions No. 9. This interpretation of the statute is arbitrary, and ignores whether the good standing requirement detracts from the union's democratic process, either by operating to the advantage of an entrenched leadership, or by disqualifying a majority of the membership from holding office. It is not the facial reasonableness or unreasonableness of a requirement which determines its validity, but its antidemocratic effect. See, e.g., Doyle v. Brock, 821 F.2d 778, 785 (D.C.Cir.1987); Donovan v. Illinois Education Association, 667 F.2d 638, 641 (7 Cir.1982).
 
 II.
 
 12
 The district court correctly considered whether the 24-month continuous good standing requirement as applied by the union had an antidemocratic effect on the union, and thus violated Sec. 401(e) of the Act. The district court found that no such antidemocratic effect was present, and this finding of fact will be set aside only if clearly erroneous. See Anderson v. Bessemer City, 470 U.S. 564, 575, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985). We do not think it to be so. As found by the district court, 10 percent of the union membership, or approximately 700 members, would have been disqualified based on the continuous good standing requirement. One member whose dues were 51 days in arrears was actually disqualified from seeking union office. It also found, however, that no seasonal vagaries in employment made prompt payment in dues potentially difficult, that the members were well-paid, and that the elections in question were vigorously contested. The court also found that the 72-hour grace period extended to members on a foreign voyage, and the waiver available to ill or inactive members, are reasonably tailored to accommodate members who are most likely to need a grace period.
 
 
 13
 The good standing requirement is also not applied in an identical manner to members who pay dues pursuant to an employer checkoff agreement. These members are billed for any unpaid dues at the end of the year. The court found that this lack of uniformity in the application of the good standing requirement was justified. First, the union would not have been able to determine the amount of dues actually due under the checkoff agreement until the end of the year, the final amount being a percentage of the employee's total wages for the year, thus the members who paid by checkoff could not be held responsible for quarterly payment. Second, Sec. 401(e) explicitly does not permit the union to penalize union members whose dues are late through the fault of the employer. In addition to having full record support, these findings are not "internally inconsistent or implausible on [their] face", Anderson, 470 U.S. at 575, 105 S.Ct. at 1512.
 
 
 14
 We perceive no violation of Sec. 401(e) of the Act by the union's continuous membership requirement, and therefore we see no justification for setting aside the 1984 union election results.
 
 
 15
 AFFIRMED.