### UNITED STATES v. CHICAGO, M. & P. S. RY. CO.

(District Court, W. D. Washington, N. D.    April 29, 1912.)

#### No. 4,747.

MASTER AND SERVANT (§ 13*)—HOURS OF SERVICE—INTERSTATE CARRIERS—STATUTES—"ON DUTY."

 An employé is on duty within the statute making it unlawful for any interstate carrier to require or permit any employé to be or remain on duty for a longer time than 16 consecutive hours, where he is at his post in obedience to rules or requirements of his superior and ready and willing to work, whether actually at work or awaiting orders, or the removal of hindrances from any cause, and the limitation of time of continuous service when applied to trainmen includes the time of duty preceding and subsequent to the time of service in actual operation of trains, as required by the rules of the employment.

 [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 809–854; Dec. Dig. § 13.*]

At Law. Action by the United States against the Chicago, Milwaukee & Puget Sound Railway Company to recover statutory penalties. Judgment for plaintiff.

This is an action at law to recover penalties prescribed by section 14 of the act of Congress approved June 18, 1910 (Act June 18, 1910, c. 309, 36 Stat. 555 [U. S. Comp. St. Supp. 1911, p. 1304]), amendatory of the Interstate Commerce Law (Act Feb. 4, 1887, c. 104, § 20, 24 Stat. 386 [U. S. Comp. St. 1901, p. 3169]), for failure on the part of the defendant to comply with an order of the Interstate Commerce Commission requiring all carriers subject to the provisions of the act entitled "an act to promote

the safety of employés and travelers upon railroads by limiting the hours of service of employés thereon," approved March 4, 1907 (chapter 2939, 34 Stat. 1416 [U. S. Comp. St. Supp. 1907, p. 913]; F. S. A. Supp. 1909, p. 581; Pierce's Fed. Code, § 7934 [U. S. Comp. St. Supp. 1911, p. 1321]), to report within 30 days after the end of each month all instances where such employés have been on duty for a longer period than that provided in said act.

The following is a statement of the facts in regard to the alleged delinquencies:

"At the time of the alleged violations, there was in force between the trainmen and enginemen and railway company an agreed fixed schedule and rule whereby the time allowances for the conductor and brakeman, paid on mileage basis, began one hour before the leaving time or departure of the train, and the engineer and fireman were required to report 30 minutes before the departure of the train, and were allowed 15 minutes after the arrival of the train at destination within which to inspect the engine. The conductor and brakeman were allowed the one hour preparatory time before the departure of the train and were paid therefor full wages, and the engineer and fireman were allowed the 30 minutes preparatory time and the 15 minutes inspection time, and were paid therefor full wages. Prior to the issuance of the order of the Railway Commission, the railway company never considered the statute violated, unless there was an excess of 16 hours continuous service between the leaving of the train and its arrival at destination, and at no time ever made a report, unless the actual service aforesaid exceeded the 16 hours. Its superintendents so understood the rule until Superintendent Foster of the division in question was informed otherwise by the inspector of the Railway Commission. After such information from said inspector, the railway company has always reported to the Railway Commission the preparatory time and the inspection time as a part of the on-duty time or service.

"As to train No. 92, the actual leaving time was 5 p. m. July 1st, and the actual tying-up time at Cle Elum was 9 a. m. July 2d, making 16 hours; while the actual time allowed the men and for which they were paid—as shown by the time slips turned in by the employés and the schedule agreement between the railway company and said employés—was, as alleged in the complaint, to wit, the engineer and fireman from 4:30 p. m. July 1st to 9:15 a. m. July 2d, making 16 hours and 45 minutes; and the conductor and brakeman from 4 p. m. July 1st to 9 a. m. July 2d, making 17 hours. Excluding the preparatory time and the inspection time of 45 minutes allowed the engineer and fireman, and the preparatory time of 1 hour allowed the conductor and brakeman on said train 92, the on-duty service was not more than 16 hours.

"As to train 64, the actual leaving time was 9:50 p. m. July 1st and the actual tying-up time was 2:10 p. m. July 2d, making 16 hours and 10 minutes; while the actual time for which the men were paid, as shown by the time slips turned in by the employés and the schedule agreement between the railway company and said employés, was, as alleged in the complaint, to wit, the engineer and fireman from 9:30 p. m. July 1st to 2:30 p. m. July 2d, making 17 hours; and for the conductor and brakeman from 9 p. m. July 1st to 2:10 p. m. July 2d, 17 hours and 10 minutes. Excluding the preparatory time and the inspection time of 45 minutes allowed the engineer and fireman on train 64, the on-duty service was just 16 hours, and, excluding the preparatory time of one hour allowed conductor and brakeman on said train 64, the on-duty service was 16 hours and 10 minutes. The reason why the 10 minutes excess time was not reported to the Railway Commission was due to the misreading of the daily train sheet by the employé making up the reports, which train sheet shows the scheduled time of the train and its actual leaving time. On the face of the train sheet the scheduled leaving time and the tying-up time appears at the top of the train sheet to be 10 p. m. and 2 p. m.; that, after several columns of figures, there appears the actual leaving time, which is ten minutes earlier than the scheduled time; that because of the unusual occurrence of train 64 leaving 10 minutes ahead of its scheduled time and the information shown in an obscure place the clerk

checking the daily train sheet took the figures at the top of the train sheet, showing the actual scheduled time and the arrival time, to be the true report of said train; that the face of the train sheet shows that such a mistake could easily have been made by one checking the same, the clerk being governed by what would first appear upon the sheet, to wit, the actual scheduled time."

Elmer E. Todd, U. S. Atty.
Geo. W. Korte, for defendant.

HANFORD, District Judge (after stating the facts as above). By its own admissions the defendant appears to be technically guilty of disobedience of the Interstate Commerce Commission's order and subject to the penalty prescribed by the act of 1910, and it defends against this prosecution only for the purpose of having a judicial determination of a single question, viz.: Does the statutory limitation of time of continuous service applicable to engineers, firemen, conductors, and brakemen employed in the operation of trains include, or exclude, the time on duty preceding and subsequent to the time of service in actual operation of trains between the terminal points at which their runs are commenced and ended?

There is no ambiguity in the statute. Therefore it does not have to be construed in order to ascertain its meaning. It is mandatory in declaring:

"That it shall be unlawful for any common carrier, its officers or agents, subject to this Act to require or permit any employé subject to this Act to be or remain on duty for a longer period than sixteen consecutive hours."

This broad rule is restricted only by the exceptions specified in the act itself. These include cases of casualty, or unavoidable accident, or the act of God, or where delay was the result of a cause not known to the carrier, its officer, or agent in charge of such employés at the time when they leave a terminal and crews operating wrecking and relief trains, and the court is not authorized to add other exceptions by construing the act in a way to extend the duration of permissible continuous service. An employé is on duty when he is at his post in obedience to rules or requirements of his superior, and ready and willing to work whether actually at work or waiting for orders or for the removal of hindrances from any cause. The words "on duty" appear to have been intelligently chosen and used in the composition of the statute to bar all excuses for noncompliance with its requirements by any pretext of misunderstanding its meaning. United States v. Illinois Cent. R. Co. (D. C.) 180 Fed. 630.

Findings in accordance with this opinion may be prepared for my signature, and thereupon a judgment against the defendant for the penalties imposed by the statute will be entered.