## UNITED STATES v. GREAT NORTHERN RY. CO.

(Circuit Court of Appeals, Ninth Circuit. December 11, 1922.)

No. 3878.

**Master and servant ⊜⟞⟞13—Employee riding deadhead held not "on duty," within Hours of Service Act.**

An employee in the morning brought a helper engine from the round-house to the station and turned it over to the crew of a freight train at 8:15. At 2:45 p. m., when the train reached a point 36 miles distant, he was required to again take charge of the engine and return it. In the meantime he had no duties to perform, but rode deadhead in the caboose. *Held*, that during such time he was not "on duty," within the meaning of Hours of Service Act, § 2 (Comp. St. § 8678).

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, On Duty.]

In Error to the District Court of the United States for the Northern Division of the Eastern District of Washington; Frank H. Rudkin, Judge.

Action by the United States against the Great Northern Railway Company. Judgment for defendant, and plaintiff brings error. Affirmed.

Frank R. Jeffrey, U. S. Atty., of Spokane, Wash., and Monroe C. List, Sp. Asst. U. S. Atty., of Washington, D. C.

Charles S. Albert and Ernest E. Sargeant, both of Spokane, Wash., for defendant in error.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

GILBERT, Circuit Judge. Two causes of action are presented on writs of error to review judgments of the court below, rendered in favor of the defendant in error and adjudging that no penalty be recovered against it for alleged violations of the Hours of Service Act (Comp. St. §§ 8677–8680). The first cause of action only was tried; the second, by stipulation, being dependent upon the disposition of the first. There was no controversy as to the facts. They were evidenced by a stipulation and by the testimony of Carman, the conductor, whose employment was claimed to have been in violation of the act, and who was called as witness by the plaintiff in error. On the day in question Carman went on duty at 7:45 a. m. and took a light engine from the roundhouse in the yard limits, a distance of one-half mile, to the depot at Wenatchee. There at the hour of 8:15 a. m. he turned the engine over to the crew of extra No. 1813. At 9 a. m. that train left Wenatchee, taking the engine thus turned over to it as a helper, and proceeded to Quincy, a distance of 36 miles, where it arrived at the hour of 2:45 p. m. of the same day.

The question on which decision turns is whether the conductor was on duty, within the meaning of the law, from the time when he turned the engine over at Wenatchee until he arrived at Quincy. The evidence was that during that period he had no duties to perform, that

from 8:15 a. m. until 9 a. m., when the train left Wenatchee, he was off duty, and that during the ride from Wenatchee to Quincy he was his own free agent, and had no work to do; that he had to go to Quincy in order to bring his engine back; that he was free to go there by automobile, or passenger train, or on the freight train; that the general understanding was that he was released from duty as soon as he turned the engine over to the freight train at Wenatchee, and until he arrived at Quincy; that he rode in the caboose of the freight train, and when not sleeping he might be cooking his meals, or doing anything he chose to do, as freely as he might have done if he were at home; that he was paid as for continuous time from 7:15 in the morning until he finished the round trip from Wenatchee to Quincy and return; that he was "deadheading" from Wenatchee to Quincy, as the term was understood in railroad parlance.

The Hours of Service Act makes it unlawful for any common carrier to require or permit an employee to be or remain on duty for a longer period than 16 consecutive hours. 34 Stat. p. 1415. On May 5, 1908, the Interstate Commerce Commission promulgated the following rule:

"74. *Hours of Service Law.*—Employees deadheading on passenger trains or on freight trains and not required to perform, and not held responsible for the performance, of any service or duty in connection with the movement of the train upon which they are deadheading, are not while so deadheading 'on duty,' as that phrase is used in the act regulating the hours of labor."

The plaintiff in error contends that the conductor was on duty while going from Wenatchee to Quincy, for the reason that he was under orders to go there in order to bring back the helper engine. Reference is made to the Interstate Commerce Commission's rule 287b, § 2, which declares:

"The term 'on duty' includes all the time during which the employee is performing service. An employee goes on duty at the time when he begins to perform service, or at the time when he is in readiness to perform service, and goes 'off duty' at the time when he is relieved from service and from responsibility for performance of service."

And it is argued that, when the two rules are considered together, the term "deadheading," used in the first, means deadheading for the purpose of going off duty, and not deadheading for continued service. We are not convinced that the rules should be thus construed. The time of the conductor, while going from Wenatchee to Quincy, was time of complete release from service. It is true that he was not free to go where he pleased, but he was free to do as he pleased. It was not, as was the case in United States v. Southern Pac. Co., 245 Fed. 722, 158 C. C. A. 124, a release which at any time might have been interrupted by a call to duty. There was no contingency that, while being so deadheaded, the conductor might be called upon to render any kind of service. He was as fully discharged from duty as he would have been, had there been no preliminary service in the yard at Wenatchee before he delivered the helper engine to the freight train. A jury trial was waived in this case, and the cause was submitted for decision to the court below. We must assume that the court found, in the

interval occupied by the conductor while going from Wenatchee to Quincy, a period for substantial rest which broke the continuity of service.

The judgment is affirmed.