# BROTHERHOOD OF LOCOMOTIVE ENGINEERS ET AL. *v.* ATCHISON, TOPEKA & SANTA FE RAILROAD CO. ET AL.

No. 94–1592.   Argued October 30, 1995—Decided January 8, 1996

KENNEDY, J., delivered the opinion for a unanimous Court.

*Lawrence M. Mann* argued the cause for petitioners. With him on the briefs were *Harold A. Ross* and *Clinton J. Miller III.*

*Malcolm L. Stewart* argued the cause for the federal respondents. With him on the brief were *Solicitor General Days, Assistant Attorney General Hunger, Deputy Solicitor General Kneedler, Leonard Schaitman, John F. Daly, Paul M. Geier,* and *Daniel Carey Smith. Ronald M. Johnson* argued the cause and filed a brief for respondents Atchison, Topeka and Santa Fe Railway Company et al.*

JUSTICE KENNEDY delivered the opinion of the Court.

We granted certiorari to resolve a division between two Courts of Appeals regarding the correct statutory classification, under the Hours of Service Act, 49 U. S. C. § 21101 *et seq.,* of the time that train employees spend waiting for transportation at the end of their shift.

I

Congress enacted the Hours of Service Act (HSA) in 1907. Hours of Service Act, ch. 2939, § 1, 34 Stat. 1415. The HSA's purpose is to promote railroad safety by limiting the number of hours a train crew may remain on duty and by requiring

---

*\*John H. Broadley, Donald B. Verrilli, Jr., Robert W. Blanchette,* and *James C. Schultz* filed a brief for the Association of American Railroads as *amicus curiae* urging affirmance.

railroads to provide crew members with a certain number of off-duty hours for rest between shifts. *Ibid.; Chicago & Alton R. Co.* v. *United States*, 247 U. S. 197, 199 (1918). In particular, the HSA provides that train employees may not remain on duty for more than 12 consecutive hours, and, having worked for that period, must be given at least 10 consecutive hours off duty. 49 U. S. C. § 21103(a).

To comply with the HSA, railroads must schedule operations and crew assignments with some precision, for if operations require the crew to be on duty for more than 12 hours, the railroads may incur substantial penalties. The Federal Railroad Administration (FRA) administers the HSA, and it is authorized to impose a fine of between $500 and $10,000 for each violation of the statute. § 21303(a)(2). For each crew member on duty longer than the statutory maximum there is a separate violation. *Missouri, K., & T. R. Co. of Tex.* v. *United States*, 231 U. S. 112, 118–119 (1913); 48 CFR pt. 228, App. A, p. 244 (1994). The statute provides certain exceptions to the rules in cases of emergency. 49 U. S. C. § 21103(c).

At times, of course, a train cannot reach the scheduled crew change point, or even a convenient change point, within the 12 hours. To avoid violating the HSA, the railroad must stop the train so that a new crew can replace the first crew, now called the "outlawed crew." Transportation of the new crew to the train and the outlawed crew back to the terminal is called "deadhead transportation." The HSA provides different treatment for the time spent in deadhead transportation, depending on whether the transportation is taking a replacement crew to the train or taking the outlawed crew from the train. The statute provides that time spent in deadhead transportation to a duty assignment is time on duty, while time spent in deadhead transportation from a duty assignment to the place of final release is neither time on duty nor time off duty. § 21103(b)(4). Time that is neither on duty nor off duty is referred to in the industry as

"limbo time." At oral argument, the Court was advised that train employees are paid for limbo time.

We thus know how to treat the time the employee spends in the deadhead vehicle. The issue is how to classify the time the outlawed crew spends waiting for the deadhead transportation to arrive. Petitioners, the Brotherhood of Locomotive Engineers and the United Transportation Union, claim the waiting time is on-duty time that counts against the 12-hour limit. Save for a short-lived period when it changed its policy to acquiesce in a decision of the Court of Appeals for the Ninth Circuit that we shall recount, the FRA for many years has taken the contrary position. In its view, so long as crew members are not required to perform duties for the railroad while they wait, time spent waiting for deadhead transportation from a duty site is to be treated in the same way as the time in the deadhead transportation itself—that is, as limbo time. 58 Fed. Reg. 18163, 18164 (1993). The railroads, who are respondents along with the Secretary of Transportation, agree with the FRA's position.

In 1990 petitioners brought suit in California and Oregon, challenging the FRA's position. On appeal, the Court of Appeals for the Ninth Circuit held that the time spent waiting for deadhead transportation from a duty site is time on duty. The court concluded that the time was so defined before Congress amended the HSA in 1969 and that the 1969 amendments disclose no intent to change that result. *United Transportation Union* v. *Skinner*, 975 F. 2d 1421, 1426–1428 (1992).

For the sake of uniformity, the FRA decided to apply the Ninth Circuit's interpretation of the HSA on a nationwide basis. It announced the policy change in an October 28, 1992, letter to Robert W. Blanchette, Vice President of the Association of American Railroads, App. 73, and later published notice in the Federal Register, 58 Fed. Reg. 18163 (1993). In response, nine major railroads instituted the

present action, seeking direct review in the United States Court of Appeals for the Seventh Circuit of the FRA's order changing its interpretation. A three-judge panel of the Seventh Circuit affirmed the FRA's order, see *Atchison, T. & S. F. R. Co.* v. *Peña,* 29 F. 3d 324 (1994), but that opinion was superseded when the Seventh Circuit took the case en banc, 44 F. 3d 437 (1994). The en banc court rejected the Ninth Circuit's interpretation and held that time spent waiting for deadhead transportation is limbo time.

Because of the importance of uniform nationwide application of the HSA's regulatory scheme, we granted certiorari. 515 U. S. 1141 (1995).

## II

In determining how time spent waiting for deadhead transportation should be classified, we begin with the text and design of the statute. As first enacted, the HSA divided all time into two categories—on duty and off duty—but it did not define either term. Congress amended the HSA in 1969, reducing the number of permissible on-duty hours and providing some specific rules for determining if a given period of time should be considered on duty or off duty. These statutory provisions are the controlling guide in the case before us, and are as follows:

> "(1) Time on duty begins when the employee reports for duty and ends when the employee is finally released from duty.
> "(2) Time the employee is engaged in or connected with the movement of a train is time on duty.
> "(3) Time spent performing any other service for the railroad carrier during a 24-hour period in which the employee is engaged in or connected with the movement of a train is time on duty.
> "(4) Time spent in deadhead transportation to a duty assignment is time on duty, but time spent in deadhead

transportation from a duty assignment to the place of final release is neither time on duty nor time off duty.

"(5) An interim period available for rest at a place other than a designated terminal is time on duty.

"(6) An interim period available for less than 4 hours rest at a designated terminal is time on duty.

"(7) An interim period available for at least 4 hours rest at a place with suitable facilities for food and lodging is not time on duty when the employee is prevented from getting to the employee's designated terminal by any of the following:

"(A) a casualty

"(B) a track obstruction

"(C) an act of God

"(D) a derailment or major equipment failure resulting from a cause that was unknown and unforeseeable to the railroad carrier or its officer or agent in charge of that employee when that employee left the designated terminal."   49 U. S. C. § 21103(b).

Although these provisions do not specify time spent waiting for deadhead transportation as a separate category, § 21103(b)(4) does classify the "time spent in deadhead transportation."   That phrase, as a matter of common usage, can be read to include the time spent waiting for the deadhead transportation, but we need not confine our examination to those words alone.   When we consider the question in light of the purpose of the HSA and all the quoted provisions, we conclude that the time spent waiting for deadhead transportation is of the same character as the time spent in the deadhead transportation itself.

The purpose of the HSA is to promote the safe operation of trains, and the statutory classification must be understood in accord with that objective.   The statute, in effect, makes the determination that a train employee who remains on duty for more than 12 consecutive hours will be too fatigued to operate a train in a safe manner.   In consequence, the

provisions delineate as on-duty time those hours which will contribute to an employee's fatigue during his or her work assignment. In some instances, the relationship between the time at issue and the employee's fatigue is apparent, for example, the command of § 21103(b)(2) that the "[t]ime the employee is engaged in or connected with the movement of a train is time on duty."

The classification of other time periods is not quite as straightforward, but we think still apparent from the statutory design. What if a train employee is permitted to take a lengthy break between periods of work? If the train employee is not working at all during this time, is it time off duty? The statute answers the question by reference to the likelihood of employee fatigue in the ensuing period of work without the mandated rest interval. The statute specifies that an "interim period available for less than 4 hours rest at a designated terminal," § 21103(b)(6), and an "interim period available for rest at a place other than a designated terminal," § 21103(b)(5), are to be considered on-duty hours. It follows from the statutory scheme that these rest periods are not sufficient to alleviate fatigue.

The treatment of deadhead transportation follows the same scheme. Section 21103(b)(4) provides that "[t]ime spent in deadhead transportation to a duty assignment is time on duty, but time spent in deadhead transportation from a duty assignment to the place of final release is neither time on duty nor time off duty." The distinction between transportation to a duty assignment and transportation from a duty assignment makes perfect sense, given the statute's purpose of promoting train safety. Time spent deadheading to a duty site contributes to the fatigue that a train employee is likely to have during the 12-hour shift. By defining the time spent deadheading to a duty assignment as on-duty time, Congress ensured that an employee will not operate a train more than 12 hours after reporting for duty. The time employees spend deadheading from the duty site does not

give rise to these safety concerns, for no matter how much time the employees must spend deadheading away from the duty site, they will still receive the requisite off-duty rest time once they reach the terminal and before beginning a new shift involving train operations.

The same reasoning applies to the time spent waiting for deadhead transportation. Time spent waiting for deadhead transportation to a duty site should be classified as on-duty time because, along with the time spent in the transportation itself, it contributes to employee fatigue during the work assignment. Time spent waiting for deadhead transportation away from a duty site does not cause the fatigue that implicates these safety concerns and so, like the deadhead transportation which the wait precedes, the waiting time must be deemed limbo time to effect the statutory design.

It is common ground, moreover, that at the beginning of a shift, the wait for transportation and the transportation itself are treated alike; that is, the time spent waiting for deadhead transportation after reporting for duty at the required hour and the time spent in the deadhead transportation itself are both on-duty time. A consistent interpretation of the statute requires that the parallelism between the wait and the transportation when the shift begins carry over to the wait and the transportation when it ends.

Finally, the concerns that surfaced during the 1969 amendment process lend additional support to our conclusion. As noted, before the 1969 amendments time under the HSA fell into one of two categories—on duty or off duty. The binary scheme created a problem, however. The hours spent deadheading from the duty site to the terminal counted as off-duty rest time, see *United States* v. *Great Northern R. Co.*, 285 F. 152, 153 (CA9 1922), and, as a consequence, employees often spent much of their off-duty time not resting, but deadheading to the terminal. S. Rep. No. 91–604, p. 7 (1969); H. R. Rep. No. 91–469, p. 7 (1969). The railroad unions responded to the problem during the amendment process by

advocating that all time spent deadheading be classified as time on duty, and the original bill proposed in the House so provided. *Ibid.* The railroad industry opposed the change, however, particularly with respect to time spent deadheading from the duty site because of the operating difficulties that would result. Hearings on H. R. 8449, H. R. 84, and H. R. 9515 before the House Committee on Interstate and Foreign Commerce, 91st Cong., 1st Sess., 134–135 (1969). If time spent deadheading from a duty site were to be on-duty time, railroads would have to calculate the approximate deadheading time and stop the train early enough to take account of that interval. Any miscalculation would lead to a violation of the HSA.

The enacted statute reflects a compromise in the treatment of deadhead transportation: on-duty time at the shift's beginning, limbo time at its end. The creation of limbo time solved the problem of the employee who was forced to spend much of his or her off-duty rest time in deadhead transportation, but it did so without imposing scheduling difficulties on the railroads. If we were now to classify the waiting time as on-duty, as petitioners request, we would impose on railroads the same scheduling problems that Congress sought to avoid.

Petitioners try to escape the force of the argument by attempting to fit the time at issue here within other HSA provisions. For instance, because an "interim period available for rest at a place other than a designated terminal is time on duty," 49 U. S. C. § 21103(b)(5), petitioners reason that all waiting time at a place other than a designated terminal must be time on duty. But, as we have said, interim periods available for rest occur, by definition, between periods of service for the railroad. Because the employee must return to work immediately after an interim rest period, Congress had to determine whether such a rest period would be sufficient to alleviate fatigue. Its conclusions on that score have no bearing when the time spent waiting for deadhead trans-

portation is followed not by renewed service but by the statutory off-duty rest time. Petitioners next argue that because the HSA provides that "[t]ime on duty begins when the employee reports for duty and ends when the employee is finally released from duty," § 21103(b)(1), time on duty must always continue until the employee reaches his designated terminal. But that cannot be, for the HSA is express in providing that deadhead transportation from a duty site is limbo time, § 21103(b)(4).

Petitioners also point to § 21103(b)(3), which classifies as on duty any "[t]ime spent performing any other service for the railroad carrier during the 24-hour period in which the employee is engaged in or connected with the movement of a train." They say that because employees may be required to perform services for the railroad while they wait for the deadhead transportation to arrive, waiting time must be considered time on duty pursuant to § 21103(b)(3). Petitioners' argument begs the question, however. If employees are required to perform services covered by § 21103(b)(3), the time is on-duty time by definition. The question presented here, however, is how to treat the time spent waiting for deadhead transportation when no additional services are required, and § 21103(b)(3) cannot answer that question.

Petitioners, like the Ninth Circuit in *United Transportation Union* v. *Skinner*, 975 F. 2d, at 1426, point to numerous cases, most of them decided during the early part of this century, that they believe support their interpretation of the statute. See *Missouri, K., & T. R. Co. of Tex.* v. *United States*, 231 U. S. 112 (1913); *Northern Pacific R. Co.* v. *United States*, 220 F. 108 (CA9 1915); *United States* v. *Southern Pacific Co.*, 245 F. 722 (CA9 1917); *United States* v. *Pennsylvania R. Co.*, 275 F. Supp. 345 (WD Pa. 1967); *United States* v. *Chicago, M. & P. S. R. Co.*, 195 F. 783 (WD Wash. 1912). We need not determine whether the Ninth Circuit's reading of these cases was the correct one, cf. *Atchison, T. & S. F. R. Co.* v. *Peña*, 44 F. 3d 437, 444 (CA7 1994) (opinion below)

(distinguishing the above cases because they addressed "the categorization of time spent by a railroad crew waiting for repairs to be made or for some other delay before resuming its duties of operating the train"), because they were all decided before Congress amended the HSA. Thus, even if the time at issue here had been treated as on-duty time before 1969, that conclusion would have no bearing on how the time should now be defined because the 1969 amendments addressed this question.

For these reasons, we reject petitioners' construction of the HSA. The text, structure, and purposes of the statute persuade us that Congress intended that time spent waiting for deadhead transportation from a duty site should be limbo time. The judgment of the Court of Appeals is affirmed.

*It is so ordered.*