CALIFORNIA STATE LEGISLATIVE
BOARD, United Transportation
Union, Petitioner,

v.

Norman Y. MINETA, Secretary of
Transportation; Federal Railroad
Administration, Respondents,

Association of American Railroads,
Intervenor–Respondent.

No. 01–71941.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 10, 2003.

Filed May 12, 2003.

Lawrence M. Mann, Alper & Mann, P.C., Washington, DC, for the petitioner.

Peter J. Plocki, U.S. Department of Transportation, Washington, D.C., for the respondents.

Michael J. Rush, Association of American Railroads, Washington, D.C., for the intervenor-respondent.

Before: CANBY, O'SCANNLAIN, and W. FLETCHER, Circuit Judges.

CANBY, Circuit Judge.

This appeal involves an interpretation of the Hours of Service Laws ("the Act"), by which Congress limited the number of consecutive hours that train employees could be required to remain on duty without a substantial period of rest. The precise issue is whether an otherwise-sufficient rest period is rendered insufficient when it is interrupted by a brief telephone call (a "duty call") from a railroad to its off-duty worker telling the worker when to report to work. The Federal Railroad Administration ("the FRA") held that such a call did not cause a violation of the Act. Petitioner California State Legislative Board, United Transportation Union ("the Union") petitions for review under the Administrative Procedure Act. The Association of American Railroads has intervened in support of the FRA. Because we conclude that the FRA's interpretation of the Act was reasonable, we deny the Union's petition for review.

## Background

The Act is a series of statutes administered by the Secretary of Transportation, who has delegated that authority to the FRA. See 49 U.S.C. § 103(c); 49 C.F.R. § 1.49(d). One provision of the Act limits employees to shifts of no more than twelve consecutive hours on duty. See 49 U.S.C. § 21103(a)(2). An interim period of rest, if it is less than four hours in duration, or at a place other than a designated terminal with suitable food and lodging facilities, is defined as on-duty time, presumably because such periods of brief or inconvenient rest do not give train employees adequate opportunities to refresh themselves. See id. § 21103(b)(5), (6).

The present controversy arose when the Union Pacific Railroad deadheaded[1] a train crew from the East Los Angeles train yard to Yuma, Arizona. The crew left East Los Angeles at 6:00 p.m. and arrived in Yuma at 11:15 p.m. The Act makes clear that deadheading to a duty assignment constitutes "on duty" time. 49 U.S.C. § 21103(b)(4). The crew was re-

---

1. "Deadheading" is the act of transporting employees between a train station and a duty assignment location.

leased at 11:15 p.m. Yuma is a designated terminal, so a rest period there of four hours or more would count as "off-duty" time. *See id.* § 21103(b)(6). Three hours later, at 2:15 a.m., one of the crew members received a call from the railroad telling him to report for duty at 3:45 a.m. He reported at 3:45 a.m. and operated a train traveling to West Colton, California, which arrived at 9:45 a.m.

The Union complained to the FRA, contending that the 2:15 a.m. duty call interrupted after three hours what would otherwise have been a four-and-one-half-hour rest period. Because rest periods of less than four hours are deemed by the Act to be "on duty" time, *id.,* the Union contended that the crew member was on duty continuously from 6:00 p.m. until 9:45 a.m. the next day, exceeding the Act's limit of twelve consecutive hours on duty.[2] *See id.* § 21103(a)(2).

The FRA ruled that the single duty call at 2:15 a.m. did not interrupt the rest period in such a manner as to cause it to fall below the four hours required for it to constitute time off duty. As a result, the crew member's on-duty time on either of the two days involved did not exceed twelve consecutive hours, and therefore did not violate the Act. The Union petitions for review under the Administrative Procedure Act, contending that the FRA's interpretation of the Act is "arbitrary, capricious ... or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

### Analysis

■ The FRA has taken the position since 1971 that duty calls are not to be considered as interruptions of off-duty periods prescribed by the Act. Its position on this appeal is that a single, brief duty call does not meaningfully disrupt the rest of the employee, and thus does not cause an interruption of the off-duty period. Repeated calls, however, could disturb rest and accordingly might interrupt the off-duty period. The general purpose of the Act is to protect employees from fatigue, *see Bhd. of Locomotive Eng'rs v. Atchison, Topeka & Santa Fe R.R. Co.,* 516 U.S. 152, 157–58, 116 S.Ct. 595, 133 L.Ed.2d 535 (1996), but the Act provides no guide concerning when a telephone call may defeat that purpose.

■ Because the Act provides no explicit guidance on the issue, the FRA's rule cannot be said to contravene the text of the Act. Indeed, the language and purpose of the Act can be interpreted to support a rule either way on the effect of duty calls. The question then arises whether the FRA's interpretation of the Act is entitled to deference. Because the FRA does not have rulemaking power with respect to the Act, it is not entitled to deference under the standard laid out in *Chevron, USA v. Natural Res. Def. Council,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *See United States v. Mead Corp.,* 533 U.S. 218, 226–27, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001). As a result, the appropriate amount of deference we give to the FRA's final decision depends upon "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Id.* at 228 (quoting *Skidmore v. Swift,* 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944)).

■ By these standards, the FRA's rule is entitled to our deference. It has been thoroughly considered and consis-

---

**2.** The Union originally contended that the crew member's duty time extended beyond his 9:45 a.m. arrival in West Colton, but the Union no longer urges that position.

tently applied for more than thirty years.[3] The rule is a flexible one, admitting of a different result if calls are repeated or if the call deals with substantive work-related matters.[4] It was not unreasonable for the FRA to conclude that a brief call conveying only the time to report for next duty does not meaningfully disturb an employee's rest and thus cause a break in the off-duty period. In sum, the FRA's rule that a single, brief duty call does not interrupt an off-duty rest period is a permissible interpretation of the Act, and we defer to it.[5]

■ The Union argues that the Act's legislative history demonstrates that the FRA's rule is contrary to the intent of Congress.[6] The Union relies first on a Senate Committee Report that refers to the Act's requirement that an employee not work unless the employee has had at least eight or ten consecutive hours off duty in the previous twenty-four hours. *See* 49 U.S.C. § 21103(a)(1),(2). In that context, the Report states: "It is intended that the employee's 8 or 10 consecutive hours off duty be uninterrupted by duty calls by the employer railroad." S.Rep.

No. 91–604, at 8 (1969), *reprinted in* 1969 U.S.C.C.A.N. 1636, 1641 (1969). That statement, however, was not elaborated upon and is unrelated to the rest of the discussion in the Senate Report. The FRA was not required to accept as controlling this statement in the report of one committee. *See United States v. Shreveport Grain & Elevator Co.*, 287 U.S. 77, 84, 53 S.Ct. 42, 77 L.Ed. 175 (1932) ("[W]e should hesitate to accept the committee reports in preference to this contemporaneous and long-continued practical construction of the act on the part of those charged with its administration.").

The Union also relies on one exchange during the Senate floor debate on the 1969 amendments to the Act. The chief sponsor of the amendments was asked: "If an employee is given 10 hours off duty, that means 10 hours undisturbed rest; in other words from the time he is relieved from job A until the time he is called for job B, and the calling time is not within the ten hours of rest?" 115 Cong. Rec. H29,321 (daily ed. Oct. 9, 1969). The chief sponsor answered: "That is substantially correct. It says that at least 10 hours consecutive

---

3. The FRA first adopted the rule within two years after the 1969 amendments to the Act that listed on-duty activities. An agency's construction of a statute is entitled to greater deference when made contemporaneously to the statute's enactment. *See Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965).

4. The Union asserted at oral argument that duty calls are unnecessary because modern technology makes it possible for the railroads to determine before releasing crew members when those members will next need to report to work. That assertion is without support in the record, however. It is common for collective bargaining agreements between railroads and their employee unions to address duty calls and require them to be placed at least one and one-half hours in advance of reporting time.

5. This conclusion relates only to the point that a duty call does not interrupt the off-duty rest period merely by the fact that the call is made. We address and reject later in this opinion the Union's argument that the time answering the call is itself duty time, which interrupts the rest period for that reason.

6. The FRA contends that the Union abandoned all of its arguments by simply making "bold assertions" in its brief without supporting arguments. *See* Fed. R.App. P. 28(a)(9)(A) (requiring a party's brief to contain both the party's contentions as well as the reasons and the law supporting them); *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir.1994). We reject the contention. Although the Union's arguments are indeed minimal, they are sufficient to avoid abandonment.

off-duty time will be given and that does not include deadheading time back from his last assignment." *Id.*

The FRA was not required to accept this exchange as controlling, either. First, the answer was equivocal; it stated that the premise of the question was "substantially correct" and then referred to an exclusion unrelated to duty calls. Second, hearings in the House indicated that a duty call would not interrupt a specified rest period. *See Hours of Service Act Amendments of 1969: Hearings Before the House Comm. on Interstate and Foreign Commerce,* 91st Cong., (1969) at 105.[7] The legislative history accordingly does not dictate a result contrary to the FRA's rule.

■ The Union next argues that the time an employee spends answering a duty call constitutes "[t]ime spent performing any other service for the railroad carrier," which the Act includes in its list of activities giving rise to on-duty time.[8] 49 U.S.C. § 21103(b)(3). This on-duty time, the Union argues, necessarily ended the off-duty period at the three-hour point, when the call came. The Act is silent, however, as to what constitutes "other service." The legislative history also is unhelpful, stating only that the provision covers services that employees do not routinely perform and that are not typically subject to the Act. *See* S.Rep.

No. 91–604, at 9, *reprinted in* 1969 U.S.C.C.A.N. 1636, 1641.

The FRA found that answering a duty call did not constitute "other service" for several reasons. First, the FRA noted that services are usually performed for compensation and that the employee was not compensated for answering the duty call.[9] Second, the FRA determined that "other service" was intended to include those activities that could contribute to employee fatigue or affect safety, and concluded that the employee's act of answering the call did not contribute to his fatigue. Finally, it noted that other types of calls, such as those that involve more substantive matters relating to the railroad, might constitute "other service."

The FRA's reasons are sound and supported by the record. Moreover, answering duty calls is a routine practice, and the legislative history suggests that the "other service" provision was meant to cover unusual activities, such as clerical or administrative tasks not commonly performed by train employees. *See id.* The FRA's ruling is therefore reasonable and worthy of deference.

■ Finally, the Union points out that the railroad, in releasing the crew at Yuma, failed to inform the crew that they were being released for an "interim" period, rather than the more usual period of not less than eight consecutive hours that

7. That conversation went as follows:
   Mr. Skubitz: Suppose a trip requires 16 hours to cover 200 miles—under existing law you are entitled to a 10 hour rest period. But isn't it true that if you get a call for a return trip, you are called an hour and a half before you are to be on duty? Isn't this correct?
   Mr. Coughlin: I would say that is the average call.
   Mr. Skubitz: What I am trying to get across is that your actual rest time is about 7 1/2 hours, at best.

   Mr. Coughlin: That is correct.

8. The Act lists activities for which time spent is on duty, but does not list activities for which time spent is off duty.

9. Lack of compensation is not conclusive, however. The FRA acknowledges that substantive or repeated calls might constitute on-duty service, but it is unlikely that the answering of such calls would always be compensated.

must occur within the twenty-four hours before an employee is placed or continued on duty. *See* 49 U.S.C. § 21103(a)(1). The Union asserts, without further support in its argument, that this failure of advance notice prevents the Yuma interlude from being considered an interim rest period. Nothing in the Act, however, requires a railroad to give advance notice of how a release period will be classified, even though such notice is frequently given and doubtless constitutes a good management practice when it is feasible. The Union offers no support in the Act or its history, or in judicial or administrative precedent, for its point, and the FRA did not act unreasonably in rejecting it.

**PETITION FOR REVIEW DENIED.**