**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

CALIFORNIA STATE LEGISLATIVE
BOARD, UNITED TRANSPORTATION
UNION,

*Petitioner,*

v.

DEPARTMENT OF TRANSPORTATION;
NORMAN Y. MINETA, Secretary of
Transportation; ALLAN RUTTER,
Administrator,

*Respondents.*

No. 03-72211

OPINION

On Petition for Review of an Order of the
Federal Railroad Administration

Argued and Submitted
December 8, 2004—San Francisco, California

Filed March 9, 2005

Before: Diarmuid F. O'Scannlain, Robert E. Cowen,* and
Carlos T. Bea, Circuit Judges.

Opinion by Judge O'Scannlain

---

*The Honorable Robert E. Cowen, Senior United States Circuit Judge
for the Third Circuit, sitting by designation.

## COUNSEL

Lawrence M. Mann, Washington, D.C., argued the cause for the petitioner.

Peter J. Plocki, Office of General Counsel, U.S. Department of Transportation, Washington, D.C., argued the cause for the

respondents; Kirk Van Tine, Paul M. Geier, and Dale C. Andrews, Office of General Counsel, U.S. Department of Transportation, Washington, D.C., and S. Mark Lindsey, Daniel C. Smith, Billie A. Stultz, and Colleen A. Brennan, Office of Chief Counsel, Federal Railroad Administration, Washington, D.C., were on the brief for the respondents.

Louis P. Warchot and Michael J. Rush were on the brief for amicus curiae the Association of American Railroads.

## OPINION

O'SCANNLAIN, Circuit Judge:

We must decide whether the Federal Railroad Administration may exclude hotels and motels from regulation under the Hours of Service law for railroad operating employees.

### I

The Union Pacific Railroad Company rents rooms in Portola, California, for some of its operating employees at the Sierra Motel, which provides lodgings to the public.

In August of 2002, an official of the United Transportation Union ("the Union"), representing such employees, complained to the Federal Railroad Administration ("FRA"), asserting that the Sierra Motel had unsafe wiring and, because it lacked wall insulation and double-paned windows, allowed in too much noise from logging trucks and other traffic on the adjacent highway. The Union alleged that such conditions violated the Hours of Service law,[1] which regulates railroaders' work and mandatory off-duty time.

---

[1]The Hours of Service law is now codified at 49 U.S.C. §§ 21101-21108, 21303, and 21304. It is administered by the Secretary of Transportation, but the Secretary has delegated that authority to the FRA. *See CA State Leg. Bd., United Transp. Union v. Mineta*, 328 F.3d 605, 606 (9th Cir. 2003).

A regional administrator for the FRA declined to address the complaint on the grounds that the law did not apply to public lodging secured in an arms-length transaction. The Union appealed within the agency, but the decision was upheld. The Union petitions for judicial review and we have jurisdiction under 28 U.S.C. § 2342(7).

II

**[1]** The Union argues specifically that the rooms in the Sierra Motel violate clause (1) ("the sleeping conditions clause") of 49 U.S.C. § 21106, which became law in 1976 when Congress enacted a predecessor provision as an amendment to the Hours of Service law. *See* Pub. L. No. 94-348, 90 Stat. 818 (1976). The original text was substantially in its current form, which now provides:

A railroad carrier and its officers and agents—

(1) may provide sleeping quarters (including crew quarters, camp or bunk cars, and trailers) for employees, and any individuals employed to maintain the right of way of a railroad carrier, only if the sleeping quarters are clean, safe, and sanitary and give those employees and individuals an opportunity for rest free from the interruptions caused by noise under the control of the carrier; and

(2) may not begin, after July 7, 1976, construction or reconstruction of sleeping quarters referred to in clause (1) of this section in an area or in the immediate vicinity of an area, as determined under regulations prescribed by the Secretary of Transportation, in which railroad switching or humping operations are performed.

49 U.S.C. § 21106. Clause (2) ("the construction clause") was and is explicitly linked to clause (1), the sleeping conditions

clause. *See* 49 U.S.C. § 21106(2). Though the FRA did not receive rulemaking authority for the sleeping conditions clause, it did for the construction clause. *Id.*

**[2]** In 1978, in rulemaking under the construction clause, the FRA held that "sleeping quarters" did not include rooms at public lodging facilities. 43 Fed. Reg. 31,006, 31,008 (1978) (stating that "the regulation of public accommodation such as commercial hotels and motels is beyond the scope of [FRA] authority . . . . [Q]uarters provided in places of public accommodation under an ordinary arms-length transaction are not governed by [the Hours of Service law]."). In 1979, the Administrator of the FRA indicated that it maintained the same understanding of "sleeping quarters" with respect to the companion sleeping conditions clause. In 1981, the Administrator of the FRA reiterated that understanding: he declined a Congressman's request to investigate a constituent railroad worker's complaint of poor conditions at a hotel because "places of public accommodation were not intended to be treated as 'sleeping quarters' ".

In 1988,[2] and again in 1992,[3] Congress altered the scope of the penalty provision (now found in 49 U.S.C. § 21303) of the Hours of Service law. These alterations did not, however, affect the substantive provisions of 49 U.S.C. § 21106.

### III

We now turn to the merits.

---

[2]*See* Pub. L. 100-342, § 16(6)(A), 102 Stat. 635 (1988).

[3]*See* the Rail Safety and Enforcement Act, Pub. L. No. 102-365, § 9, 106 Stat. 972 (adding a standard parenthetical to the penalty provisions of eight different laws, including the Hours of Service law, that specified that penalties could be assessed against "any independent contractor providing goods or services to a railroad; and any employee of such owner, manufacturer, lessor, lessee, or independent contractor").

A

**[3]** Because the FRA does not make rules under the sleeping conditions clause, its interpretation of that clause does not automatically merit *Chevron*-level deference. *CA State Leg. Bd., United Transp. Union v. Mineta*, 328 F.3d 605, 607 (9th Cir. 2003). Instead, the deference owed the FRA depends on " 'the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors that give it power to persuade.' " *Id.* (quoting *United States v. Mead Corp.*, 533 U.S. 218, 228 (2001) (citation omitted)). Applying such test, it would appear that the FRA's interpretation merits considerable deference indeed. The FRA has maintained its interpretation for over twenty-five years and it has unique experience and insight since it is tasked with enforcing the statute. *See Mead*, 533 U.S. at 227-28 ("considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer") (citations omitted). The FRA's interpretation was contemporaneous with the passage of the statute. *See United States v. Cleveland Indians Baseball Co.*, 532 U.S. 200, 219 (2001) (" 'A regulation may have particular force if it is a substantially contemporaneous construction of the statute by those presumed to have been aware of congressional intent.' ") (quoting *Nat'l Muffler Dealers Assn., Inc. v. United States*, 440 U.S. 472, 477 (1979)). Finally, the FRA arrived at its interpretation of the sleeping conditions clause by interpreting its tandem construction clause in an notice-and-comment rulemaking that would be entitled to *Chevron*-level deference, were it at issue in this litigation.

B

**[4]** We will not defer, however, to an agency interpretation contrary to "our obligation to honor the clear meaning of a statute." *See Int'l Bhd. of Teamsters v. Daniel*, 439 U.S. 551, 566 n.20 (1979). It is crucial, therefore, that the statute support or at least permit the agency's interpretation.

**[5]** We are satisfied that it does. Though the sleeping conditions clause states that a "railroad carrier and its officers and agents . . . may provide sleeping quarters (including crew quarters, camp or bunk cars, and trailers)" only if they are "clean, safe, and sanitary", and free from "noise under the control of the carrier", the term "sleeping quarters" is not defined. 49 U.S.C. § 21106.

**[6]** Indeed, the absence of hotels and motels in the list of specific examples suggests that "sleeping quarters" only refers to railroad-owned or operated facilities. "[C]rew quarters, camp or bunk cars, and trailers" are all lodgings typically owned or operated by railroads. According to the canon of *ejusdem generis*, the general term should be defined in light of the specific examples provided. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 114-115 (2001) (explaining that when general terms accompany lists of specific examples, " 'the general words are construed to embrace only objects similar in nature to those objects enumerated by the [accompanying] specific word' " (citation omitted)).[4] Thus, while "sleeping quarters" can refer to more than "crew quarters, camp or bunk cars, and trailers," it only refers to accommodations that, like them, the railroad owns or operates.

In addition, the absence of any reference to hotels and motels is particularly striking in light of the prevailing industry custom. We are informed that most railroads put up their employees in hotels and motels rather than provide "crew quarters, camp or bunk cars, and trailers." Yet the sleeping conditions clause specifically refers to these latter while saying nothing about hotels, motels, or other public facilities. This silence suggests that such accommodations were not meant to be covered under the clause.

---

[4]The Supreme Court here refers only to specific words that *precede* general words. Indeed, that is the usual formulation to which the canon applies. There is no reason, however, to think that reversing the order of the specific and general words makes the canon inapplicable. *See* 2A Sutherland, Statutes and Statutory Construction §47.17, at 188 (5th ed., Norman Singer ed. 1992).

**[7]** Thus, though the sleeping conditions clause contains some ambiguities, a close reading strongly supports the FRA's interpretation. So does the fact that the FRA's interpretation exercises restraint with respect to motel and hotel regulation, an area still generally in the province of the States. *Cf. Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 518 (1992) (interpreting pre-emption provisions narrowly because "we must construe these provisions in light of the presumption against the pre-emption of state police power regulations"); *Gregory v. Ashcroft*, 501 U.S. 452, 461-64 (1991) (construing the Federal Age Discrimination Employment Act in light of the reality that "States retain substantial sovereign powers under our constitutional scheme, powers with which Congress does not readily interfere").

C

**[8]** Against the FRA's restraint with respect to the States and the fruits of a close reading of the text we must set the purpose of the Hours of Service law—promoting railroad safety, *see Bhd. of Locomotive Engineers v. Atchison, Topeka and Santa Fe R.R. Co.*, 516 U.S. 152, 153 (1995)—and the well-known rule that the Hours of Service law should be interpreted to further that purpose. *Atchison, Topeka and Santa Fe R.R. v. United States*, 244 U.S. 336, 343 (1917); *Chicago & A.R. Co. v. United States*, 247 U.S. 197, 199-200 (1918). Fatigue in railroaders surely decreases safety. Just as surely, good sleeping conditions in motels and hotels allow somewhat better rest and thereby decrease fatigue. Nonetheless, though an expansive reading of the sleeping conditions clause arguably might have some effects on safety, we cannot require the FRA to adopt such expansive reading in the face of the normative and textual indicia of statutory meaning. The Supreme Court has explained that "no legislation pursues its purposes at all costs. Deciding what competing values will or will not be sacrificed to the achievement of a particular objective is the very essence of legislative choice—and it frustrates rather than effectuates legislative intent simplistically to

assume that *whatever* furthers the statute's primary objective must be the law." *Rodriguez v. United States*, 480 U.S. 522, 525-26 (1987). Just two years ago this court upheld an interpretation of the Hours of Service law that allowed railroaders' rest periods to be interrupted by work related telephone calls, while rejecting an alternate interpretation that would have allowed more rest and therefore more safety. *Cal. State Legislative Bd., United Transp. Union v. Mineta*, 328 F.3d 605 (9th Cir. 2003). The safety-promoting purposes of the Hours of Service law are an important consideration in interpreting the sleeping conditions clause but not an overriding one.

The Union contends that the 1988 and 1992 amendments to the penalty provision of the Hours of Service law, especially the 1992 reference to independent contractors, also supports its interpretation. We disagree. The Hours of Service law penalty provision applies across multiple sections. In altering it, Congress had no discernible intentions with respect to the sleeping conditions clause. Indeed, even if the penalty provision referred *solely* to the sleeping conditions clause, no change in interpretation would be necessary to make the altered penalty provision meaningful. On the other hand, that Congress acted to alter the Hours of Service law without specifying that "provid[ing] sleeping quarters" referred to renting rooms in hotels and motels actually supports the FRA's interpretation. Congressional " 'failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress.' " *Douglas County v. Babbitt*, 48 F.3d 1495, 1504 (9th Cir. 1995) (quoting *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 846 (1986) (citation omitted)).

## IV

**[9]** For the foregoing reasons the FRA's interpretation of 49 U.S.C. § 21106 is entitled to deference. The petition for review is

**DENIED**.