In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3146

Alexis M. Herman, Secretary of Labor,

Plaintiff-Appellee,

v.

Local 1011, United Steelworkers of America,
AFL-CIO, CLC,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. CA 2:97-CV 409--Rudy Lozano, Judge.

Argued February 11, 2000--Decided March 23, 2000

 Before Posner, Chief Judge, and Manion and Kanne,
Circuit Judges.

 Posner, Chief Judge.  Section 401(e) of the
Labor-Management Reporting and Disclosure Act of
1959, 29 U.S.C. sec. 481(e), makes all members in
good standing eligible to run for office in the
union's triennial elections subject to
"reasonable qualifications uniformly imposed."
The constitution of the steelworkers
international union conditions eligibility for
local office on the member's having attended at
least eight of the local's monthly meetings (or
been excused from attendance at them, in which
event he must have attended one-third of the
meetings from which he was not excused) within
the two years preceding the election. Noting that
the rule disqualifies 92 percent of the almost
3,000 members of Local 1011 of the steelworkers
union, the district judge, at the behest of the
Secretary of Labor, upon cross-motions for
summary judgment declared the rule void.

 The Act's aim was to make the governance of
labor unions democratic. Local 3489, United
Steelworkers of America v. Usery, 429 U.S. 305,
309 (1977); Wirtz v. Hotel, Motel & Club
Employees Union, Local 6, 391 U.S. 492, 496-98
(1968); Wirtz v. Local Union No. 125, Laborers'
Int'l Union, 389 U.S. 477, 483 (1968); Donovan v.
Local Union No. 120, Laborers' Int'l Union, 683

F.2d 1095, 1102 (7th Cir. 1982). The democratic presumption is that any adult member of the polity, which in this case is a union local, is eligible to run for office. U.S. Term Limits, Inc. v. Thornton, 514 U.S. 779, 793-95, 819-20 (1995); Powell v. McCormack, 395 U.S. 486, 547 (1969). The requirement in the U.S. Constitution that the President be at least 35 years old and Senators at least 30 is unusual and reflects the felt importance of mature judgment to the effective discharge of the duties of these important offices; nor, as the cases we have just cited hold, may Congress or the states supplement these requirements. It would be absurd to think that Senators, for example, should be required as a qualification of holding office to have attended a specified number of Senate sessions so that they would better understand how the Senate operates and the nature of the issues it deals with.

 As an original matter we would think it, not absurd, but still highly questionable, to impose a meeting-attendance requirement on aspirants for union office, at least in the absence of any information, which has not been vouchsafed us, regarding the character of these meetings. All we know is that they are monthly and that the union's constitution requires that all expenditure and other decisions of the union's hierarchy be approved at these meetings; yet despite the formal power that the attendants exercise, only a tiny percentage of the union's membership bothers to attend--on average no more than 3 percent (fewer than 90 persons). We are not told whether an agenda or any other material is distributed to the membership in advance of the meeting to enable members to decide whether to attend and to enable them to participate intelligently if they do attend. We do not know how long the meetings last or what information is disseminated at them orally or in writing to enable the attenders to cast meaningful, informed votes. For all we know the only attenders are a tiny coterie of insiders not eager to share their knowledge with the rest of the union's members. Cf. Leonard R. Sayles & George Strauss, The Local Union 99-101 (rev ed. 1967); George Strauss, "Union Democracy," in The State of the Unions 201, 209-10 (George Strauss, Daniel G. Gallagher & Jack Fiorito eds. 1991). "Unduly restrictive candidacy qualifications can result in the abuses of entrenched leadership that the LMRDA was expressly enacted to curb." Wirtz v. Hotel, Motel & Club Employees Union, Local 6, supra, 391 U.S. at 499. Cf. Donovan v. CSEA Local Union 1000, American Federation of State, County & Municipal Employees, 761 F.2d 870, 875 (2d Cir. 1985), remarking the "tight grasp of incumbent leaders."

All we know for sure about this case, so far as bears on the reasonableness of the meeting-attendance requirement, is that the requirement disqualifies the vast majority of the union's members, that it requires members who have not been attending meetings in the past to decide at least eight months before an election that they may want to run for union office (for remember that the meetings are monthly and that a candidate must have attended at least eight within the past two years unless he falls within one of the excuse categories), and that the union itself does not take the requirement very seriously, for it allows members who have attended no meetings to run for office, provided that they fall into one of the excuse categories. The categories are reasonable in themselves-- service with the armed forces, illness, being at work during the scheduled time of the meeting, and so forth-- and they expand the pool of eligibles from 95 union members to 242, of whom 53 attended not a single meeting. But if the meeting-attendance requirement were regarded as a vital condition of effective officership, equivalent in importance to the LMRDA's requirement that the candidate be a union member in good standing, the fact that a member was without fault in failing to satisfy it would not excuse the failure. Doyle v. Brock, 821 F.2d 778, 786 (D.C. Cir. 1987); Marshall v. Local 1402, Int'l Longshoremen's Ass'n, 617 F.2d 96, 98 (5th Cir. 1980). To excuse compliance would be like permitting a blind person to fly an airplane provided that he had become blind through no fault of his own, or a nonunion member to run for office if he would be a member if only he were a steelworker rather than a stockbroker. So many of the union's members are excused from the meeting-attendance requirement that there could be an election for officers of Local 1011 at which none of the candidates satisfied the requirement.

The requirement is paternalistic. Union members should be capable of deciding for themselves whether a candidate for union office who had not attended eight, or five, or for that matter any meetings within the past two years should by virtue of his poor attendance forfeit the electorate's consideration. Local 3489, United Steelworkers of America v. Usery, supra, 429 U.S. at 312; Wirtz v. Hotel, Motel & Club Employees Union, Local 6, supra, 391 U.S. at 504; Donovan v. Local Union No. 120, Laborers' Int'l Union, supra, 683 F.2d at 1105; Donovan v. CSEA Local Union 1000, American Federation of State, County & Municipal Employees, supra, 761 F.2d at 875. The union's rule is antidemocratic in deeming the electors incompetent to decide an issue that is in no wise technical or esoteric--what weight to give to a candidate's failure to have attended a

given number of union meetings in the recent past. Wendell Willkie, when he ran for President in 1940, and Dwight Eisenhower, when he ran for President in 1952, had never held political office; would anyone have doubted that the electorate was capable of deciding whether this circumstance should disqualify either of them from being President? And since most union members interested in seeking an office in the union are likely to attend meetings just to become known, Seymour Martin Lipset, Martin A. Trow & James S. Coleman, Union Democracy: The Internal Politics of the International Typographical Union 222-24 (1956), the rule is superfluous.

The briefs debate the precise significance to be attached to the percentage of union members disqualified from running for office by a challenged eligibility requirement, and to a regulation of the Department of Labor that suggests in a footnote that any requirement which disqualifies 90 percent or more of the members might be (not that it would be) invalid per se. 29 C.F.R. sec. 452.38(a) n. 25. We agree with the union that the footnote is entitled to little weight. It is vague; it is inconsistent with the body of the regulation, which makes no factor controlling; and the only reason the Department gave for it (see "Eligibility Requirements for Candidacy for Union Office," 60 Fed. Reg. 26388, 26390 (May 17, 1995)) is the perceived futility of bucking a decision by the District of Columbia Circuit that appeared to have adopted the per se approach, Doyle v. Brock, supra. And it is wrong. As Judge Boudin noted in Herman v. Springfield Massachusetts Area, Local 497, 201 F.3d 1, 4 (1st Cir. 2000), the percentage of union members disqualified from running for office by an attendance requirement is a function not only of the reasonableness of the requirement but also of the members' inclinations. Under conditions of pervasive apathy, a requirement of attending even a single meeting might disqualify the vast bulk of the membership. That is true here. Only 14 percent of the members attended even one meeting within the last two years. Yet the Department of Labor does not argue that therefore even a one-meeting requirement would be unreasonable.

We think the proper approach, and one that is consistent with the case law, see Local 3489, United Steelworkers of America v. Usery, supra, 429 U.S. at 310-13; Wirtz v. Hotel, Motel & Club Employees Union, Local 6, supra, 391 U.S. at 499; Donovan v. Local Union No. 120, Laborers' Int'l Union, supra, 683 F.2d at 1103; Usery v. Local Division 1205, Amalgamated Transit Union, 545 F.2d 1300, 1303-04 (1st Cir. 1976)--even Doyle v. Brock, supra, the most "per se" of the opinions,

concedes that "a requirement that has a large antidemocratic effect" might be justified by "show[ing] that the requirement serves valid union interests," 821 F.2d at 785--is to deem a condition of eligibility that disqualifies the vast bulk of the union's membership from standing for union office presumptively unreasonable. The union must then present convincing reasons, not merely conjectures, why the condition is either not burdensome or though burdensome is supported by compelling need. This approach distinguishes, as Judge Boudin did, between impact and burden. Herman v. Springfield Massachusetts Area, Local 497, supra, 201 F.3d at 3; see also Reich v. Local 30, Int'l Brotherhood of Teamsters, 6 F.3d 978, 988 (3d Cir. 1993); Usery v. Local Division 1205, Amalgamated Transit Union, supra, 545 F.2d at 1303. A requirement that to be eligible to be a candidate a member of the union have attended one meeting of the union in his lifetime would not be burdensome even though it might disqualify a large fraction of the union membership simply because very few members took any interest in the governance of the union. That defense is unavailable here, however. Requiring attendance at eight meetings in two years imposes a burden because it compels the prospective candidate not only to sacrifice what may be scarce free time to sit through eight meetings, but also, if he is disinclined to attend meetings for any reason other than to be able to run for union office, to make up his mind whether to run many months before the election.

The burden is great enough in this case to place the onus of justification on the union. The only justification offered is that the requirement of attending eight meetings in two years encourages union members who might want to run for office, perhaps especially opponents of the incumbents, to attend union meetings (since otherwise they may not be eligible to run), thus bolstering attendance at the meetings and fostering participatory democracy. The slight turnout at the meetings suggests that this goal, though worthy, cannot be achieved by the means adopted; the means are not adapted to the end, suggesting that the real end may be different. So far as appears, the union has given no consideration to alternative inducements to attend meetings that would not involve disqualifying from office more than nine-tenths of its members. No argument is made that a three-meeting requirement (upheld in Herman v. Springfield Massachusetts Area, Local 497, supra) would fail to satisfy the union's reasonable desire that its officers be both experienced and committed to the union. It is true that even a three-meeting requirement would have disqualified more than 90 percent of Local 1011's members. But there is still a big

difference. Under the rule challenged in this case, a union member who wanted to be sure of qualifying for eligibility to run for office might have to start attending meetings as much as a year in advance of the election, because he might miss one or more meetings for reasons that the union does not recognize as excusing (such as vacation or family leave) and because the union might cancel one or more meetings. And yet a year before the election an issue that might move a union member to incur the time and expense of running for office might not even be on the horizon. Local 3489, United Steelworkers of America v. Usery, supra, 429 U.S. at 310-11. (This reasoning led the Supreme Court in Anderson v. Celebrezze, 460 U.S. 780, 790-92 (1983), to hold unconstitutional an early-filing deadline for persons wishing to run as independents in elections for public office.) Suppose for example that six months before the election the union's president were unexpectedly indicted for having stolen union funds with the connivance of the other officers. That is an event that might galvanize opposition to incumbents. But not having been foreseen it could not play a galvanizing role, or as much of a galvanizing role, were it too late for any but a handful of union members to qualify to run against the incumbents.

 The district court was right to invalidate the meeting-attendance requirement as unreasonable, and the judgment is therefore

Affirmed.